IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHASE EPPS, | ) |
| Plaintiff, | ) |
| v. | ) |
| THOMAS DART, Sheriff of Cook County in his official and individual capacities, and Executive Director AMANDA GALLEGOS, Superintendent HERNANDEZ, Lieutenant JOHNSON, Shift Commander HUDSON, and Correctional Officer SPURLOCK, in their individual capacities, | ) Case No. 1:22-cv-02393 <br> ) Hon. Judge Mary M. Rowland <br> ) Magistrate Judge Harjani |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY**

Defendants' discovery recalcitrance continues, leaving Plaintiff no choice but to bring this motion to compel. Defendants have once again refused to produce relevant information—despite their prior agreement to do so—or to permit a physical inspection of Division 4 expressly permitted by the Federal Rules of Civil Procedure.

**BACKGROUND**

As the Court knows, this is a § 1983 case alleging that Plaintiff Chase Epps experienced objectively unreasonable conditions while he was held as a pretrial detainee in Division 4 in 2020. Compl. ¶ 1. Those conditions included serious plumbing issues. The water in Division 4 was red, and Defendants told Mr. Epps not to drink it. *Id.* ¶¶ 27–51. Throughout the Division, pipes had burst or were leaking, hot water for showers was routinely unavailable, and sinks and toilets would back up and flood cells and the dayroom with raw sewage. *Id.* ¶¶ 75, 77–79, 101–05. Defendants did not provide cleaning supplies to address the sewage outflow or the extensive mold infestations

1

in the showers. *Id.* ¶¶ 52–68. Nor did they address the insects and rats infesting not only Division 4, but also the Jail kitchens, leaving droppings and insect bodies in the food. *Id.* ¶¶ 97–100.

The Cook County Sheriff's Office, represented here by Defendant Dart in his official capacity, has *Monell* liability because Defendant Dart has final policymaking authority over Cook County Jail and, acting in that role, made the policy decision to reopen Division 4 while knowing it was uninhabitable and without adequately preparing it. Compl. ¶¶ 22, 112–13. Defendant Dart acquired that knowledge through, among other means, repeated litigation about Division 4's condition prior to its 2018 closure and after its reopening, involvement in the decision to close and demolish Division 4, and regular rounds through the Jail, including Division 4, in March and April 2020. Compl. ¶¶ 17–19, 21, 23, 109. Defendant Dart is also individually liable for these conditions because those same circumstances gave him personal knowledge of Division 4's condition. *See Epps v. Dart,* No. 20-CV-05742, 2022 WL 1316547, at *4 (N.D. Ill. May 3, 2022).

Plaintiff has sought several document categories relevant to these allegations, including:

*Work Orders*. Cook County Jail personnel use documents called work orders to report maintenance issues, including plumbing issues like leaks, clogs, and sewage backflow, and to track repairs. *See, e.g.*, Ex. 1, CCSAO Epps 000051; Ex. 2, CCSAO Epps 000052; Ex. 3, CCSAO Epps 002492–93; Ex. 4, DFM Subpoena 000002–57. These are transmitted to the Department of Facilities Management for execution. Ex. 5, Facilities Management Mot. for Summ. J., *Armstrong v. Cook County*, No. 16-cv-9215 (N.D. Ill. Apr. 1, 2019) at 3–4. Work orders record a description of the issue, where it occurred, and who reported it. They also report who addressed the issue, what they did, and when. *See, e.g.*, Ex. 1, CCSAO Epps 000051; Ex. 2, CCSAO Epps 000052. Although discovery to date lists approximately 1000 work orders from Division 4 during the period March 19, 2020 to December 31, 2020, only three work orders have been produced in this litigation, two

of which concern Division 4. Ex. 4, DFM Subpoena 000002–57; Ex. 6, CCSAO Epps 000050; Ex. 1, CCSAO Epps 000051; Ex. 2, CCSAO Epps 000052. Although Defendants initially agreed to produce these records, after Plaintiff's first motion to compel, they inexplicably reneged on their agreement. Ex. 7, 3/23/22 Letter; Ex. 8, 9/15/22 Email.

*Pest Control Records.* Cook County Jail contracts with a vendor to provide pest control services. That vendor reports regularly to the Jail, providing, at minimum: (1) bimonthly inspection reports for each area of the jail, *see, e.g.*, Ex. 9, CCSAO Epps 002500–07; Ex. 10, CCSAO Epps 002508–11; (2) daily pest notification logs for each area of the jail, *see, e.g.*, Ex. 11, CCSAO Epps 002494–95; (3) appointment records of each response to a pest notification, *see, e.g.*, Ex. 12, CCSAO Epps 002498–99; and (4) quarterly pest control summaries, *see, e.g.*, Ex. 13, CCSAO Epps 002512–21. Defendants have not produced the June and the first of the November bimonthly inspection reports for Division 4, the June daily pest notification for Tier Q2, or any pest control records regarding the Cook County Jail kitchens. Mr. Epps was housed in those tiers on those dates, and he alleges serious pest infestations in the Cook County Jail kitchens. Ex. 14, CCSAO Epps 000001–02; Compl. ¶¶ 97–100. Again, Defendants agreed to produce these records, but have made no recent progress. Ex. 7, 3/23/22 Letter (memorializing Defendants' agreement to produce); Ex. 15, 3/29/22 Email (making a partial production and representing the search is ongoing); Ex. 16, 8/24/22 Letter (requesting production by 9/14); Ex. 8, 9/15/22 Email (requesting production by 9/28); Ex. 17, 10/5/22 Email (Defendants "could not locate" some records and "continue to look" for others); Ex. 18, 10/7/22 Email (suggesting the parties are at an impasse regarding certain pest control records).

*Power washing records and the Division Sanitation Plan.* Defendants' counsel have repeatedly represented they are seeking these documents from their clients. None have been

3

produced. Ex. 19, 4/27/22 Email (agreeing to produce); Ex. 16, 8/24/22 Letter (requesting production by 9/14); Ex. 8, 9/15/22 Email (requesting production by 9/28); Ex. 17, 10/5/22 Email (Defendants "are still seeking these records").

Plaintiff has also requested an inspection of Division 4 as is expressly permitted by Federal Rule of Civil Procedure 34(a)(2). Ex. 20, Request for Entry on Land. A physical inspection of the closed facility will entail no appreciable burden, and will likely yield important information about Division 4's condition for Plaintiff and his prison conditions expert.

## ARGUMENT

**I.      DEFENDANTS ARE OBLIGATED TO PRODUCE WORK ORDERS.**

Work orders are relevant—indeed, central—to this case. They describe what conditions existed in Division 4, what (if anything) Defendants did to address those conditions, and how long any remedial action took. They identify key witnesses who reported the issues and addressed them. Defendants initially agreed to produce these documents. Ex. 7, 3/23/22 Letter.

Yet only three work orders have been produced, and only two of those regard Division 4. Ex. 6, CCSAO Epps 000050; Ex. 1, CCSAO Epps 000051; Ex. 2, CCSAO Epps 000052. Other discovery establishes that many additional relevant work orders were generated. On July 1, 2022. the Department of Facilities Management produced a log listing approximately 1,000 work orders. Ex. 4, DFM Subpoena 000002–57. Defendants produced a partial log listing 26 work orders, as well as six daily work order lists, each listing upwards of 100 work orders. Ex. 3, CCSAO Epps 002492–93; Ex. 21, CCSAO Epps 004397–98. These lists do not substitute for the work orders themselves; they do not identify when the work was done or by whom, and the "Statement of Work" is truncated on the logs and nonexistent on the daily lists. *Compare* Ex. 2, CCSAO Epps 000052 *with* Ex. 4, DFM Subpoena 000002–57 *and* Ex. 22, CCSAO Epps 004399–4400. The log entry for Work Order No. 628127, for example, cuts off midsentence: "Shut off values to mop

4

basin in N2 ceiling for N2 and N1 mop basins. Wil[l]". Ex. 4, DFM Subpoena 000002–57 at -0047. The work order itself goes on: "…Will check to see if leak stops. May have to install new shut off valves [i]f existing valves do not hold. Request has been closed." Ex. 2, CCSAO Epps 000052.

The only work orders produced to date have arisen from certain of Mr. Epps' grievances. *See* Ex. 23, CCSAO Epps 000049; Ex. 24, CCSAO Epps 000029; Ex. 6, CCSAO Epps 000050; Ex. 1, CCSAO Epps 000051; Ex. 2, CCSAO Epps 000052. That is not an appropriate limitation on discovery. The Prison Litigation Reform Act does not apply to this case, and Mr. Epps need not have grieved regarding a condition to sue on that condition. *Epps,* 2022 WL 1316547, at *5–6. This case is about all the conditions Mr. Epps endured in Division 4. Work orders submitted by correctional officers or arising from other inmates' grievances are evidence of those conditions, and are therefore discoverable.

Nor should the time period (March 1 to November 30, 2020) be narrowed. Defendants concede that Mr. Epps was in Division 4 for at least parts of June, August, September, October and November 2020. Ex. 25, Defs.' Resp. to Pl.'s 2d Requests for Produc. at 1. Issues are not immediately submitted as work orders the moment they arise, so the period for collecting work orders should be longer than Mr. Epps' time in Division 4. *See* Ex. 6, CCSAO Epps 000050 (work order dated 5/14/20 arising from a grievance dated 4/7/20). It should also include the period before Division 4's April 2020 reopening. Ex. 26, Def. Dart's Supp. Resps. to Interrog. at 3. Plaintiff alleges that that the Sheriff's Office did not adequately prepare Division 4 for reopening. Compl. ¶¶ 20–22. Work orders would reflect work done to prepare Division 4 for reopening. *See, e.g.*, Ex. 4, DFM Subpoena 000002–57 at -03 (describing April 3 work order for a "[s]weep through tiers and repair any issues…"). And their absence would be evidence of failure to do that work. Work

orders from that period would also show the conditions Defendant Dart observed on his rounds of the Jail in March and April 2020, and therefore demonstrate that he knew about those conditions.

Defendants have argued that Plaintiff should instead obtain work orders from Facilities Management. As explained in Plaintiff's Motion to Compel the Department of Facilities Management, Facilities Management is obligated to produce these documents, and has refused to do so. But it is also inappropriate for Defendants to shift their discovery obligations to a non-party. "[P]arties must accept [discovery's] travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations," and receive "partial solicitude." *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017). The responsibility to produce work orders belongs, in the first instance, to Defendants. Indeed, given that work orders are an easily identifiable, narrow set of core documents that can be readily produced, both Facilities Management and Defendants should be ordered to produce them. This will ensure that a complete set is produced. But at a minimum, somebody should be required to produce them.

## II. DEFENDANTS SHOULD BE HELD TO A DEADLINE TO PRODUCE AGREED-UPON DOCUMENT CATEGORIES.

Defendants have repeatedly agreed to produce the missing pest control records, power washing records, and Division Sanitation Plan, but have made no progress in doing so for months and can provide no date for their production. Plaintiff accordingly requests that the Court set a deadline for their production, as it has for compliance with its September 19 order.

Alternatively, to the extent Defendants are refusing to produce the missing pest control records, Plaintiff requests that the Court order their production. *See* Ex. 18, 10/7/22 Email (suggesting the parties "may be at an impasse" regarding the first November inspection and kitchen pest control records). Defendants have repeatedly agreed to produce those documents, which are

clearly relevant to Mr. Epps' allegations. Defendants' professed inability to produce pest control records regarding the kitchen particularly strains credulity, since the quarterly pest control reports show pests do occur in the kitchens. *See, e.g.*, Ex. 13, CCSAO Epps 002512–21. It follows that corresponding pest notifications and appointment records for the kitchen also exist, and should be produced.

**III.     PLAINTIFF'S INSPECTION REQUEST IS RELEVANT AND PROPORTIONAL.**

Rule 26(b)(1) allows discovery into "any nonprivileged matter that is relevant … and proportional to the needs of the case," and Rule 34 expressly permits entry onto land for inspection and photography. Fed. R. Civ. P. 34(a)(2). There is no dispute that an inspection of Division 4 is proportional to the needs of the case. Defendants have not identified *any* burden or expense that would arise from an inspection of Division 4. That is unsurprising, since they need only allow Plaintiff's counsel and expert witness(es) to access the facility. There cannot be any safety or security concerns, since Division 4 no longer houses inmates. Ex. 26, Def. Dart's Supp. Resps. to Interrog. at 3.

Defendants' sole argument is that any evidence obtained in an inspection would not be admissible, because the inspection would occur two years after Mr. Epps' time in Division 4. Ex. 27, 9/20/22 Email. But that is not an appropriate objection; discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "[T]he scope of relevance for discovery purposes is necessarily broader than it is for trial evidence." *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020) (quoting *Doe v. Loyola Univ. Chicago*, No. 18 C 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020)).

In any event, an inspection of Division 4 would yield plainly relevant (and very likely admissible) information in several ways. First, it would provide contextual information relevant to Plaintiff's claims, such as the Division's layout and the location of key areas like the dayroom.

7

Second, it would show the Division's condition after sitting vacant for a significant period—just as it had prior to its reopening in April 2020. Third, many of the issues Mr. Epps alleges have likely done permanent damage detectable today, such as water damage and sewage stains. And finally, Mr. Epps alleges structural issues that would still be observable—broken pipes, for example. Finally, a physical inspection will provide important information to Plaintiff's prison conditions expert, and cut off an obvious line of cross examination—"you mean, Mr. Expert, you never even visited the facility…". Plaintiff is in the process of identifying and retaining a prison conditions expert. This process has made clear that any prison conditions expert will require a physical inspection of Division 4 in connection with their work on the case and formation of their expert opinions.

Courts routinely allow inspections in similar circumstances. In *E.E.O.C. v. Supervalu, Inc.*, for example, this Court allowed the EEOC to conduct a Rule 34 inspection to observe employees performing tasks, rejecting the argument that such an inspection would not be "indicative of the tasks claimants performed years ago." No. 09 CV 5637, 2010 WL 5071196, at *9–10 (N.D. Ill. Dec. 7, 2010); *see also Kendall v. Bausch & Lomb, Inc.*, No. CIV. 05-5066, 2006 WL 8453959, at *2 (D.S.D. Dec. 7, 2006) (granting motion to compel inspection four and a half years after relevant events). That argument went to "the weight of any evidence generated by the site visits, and thus [was] appropriately advanced not in opposition to a discovery request but at trial before the trier of fact." *Supervalu*, 2010 WL 5071196 at *10. So too here.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his second Motion to Compel, and (1) order Defendants to complete their production of work orders regarding Division 4 from March 1, 2020 to November 30, 2020; (2) set a deadline for production of the

missing pest control records, power washing records, and Division Sanitation Plan; and (3) order Defendants to permit the requested inspection of Division 4.

Dated: October 10, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ David J. Zott*
　　　　　　　　　　　　　　　　　　　　　James F. Hurst, P.C. (*lead trial attorney*)
　　　　　　　　　　　　　　　　　　　　　David J. Zott, P.C.
　　　　　　　　　　　　　　　　　　　　　Kate Walling
　　　　　　　　　　　　　　　　　　　　　Sarah M. Kimmer
　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　　United States
　　　　　　　　　　　　　　　　　　　　　Telephone: +1 312 862 2000
　　　　　　　　　　　　　　　　　　　　　Facsimile: +1 312 862 2200
　　　　　　　　　　　　　　　　　　　　　james.hurst@kirkland.com
　　　　　　　　　　　　　　　　　　　　　dzott@kirkland.com
　　　　　　　　　　　　　　　　　　　　　kate.walling@kirkland.com
　　　　　　　　　　　　　　　　　　　　　sarah.kimmer@kirkland.com

　　　　　　　　　　　　　　　　　　　　　Christopher T. Stackhouse
　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　60 East South Temple
　　　　　　　　　　　　　　　　　　　　　Salt Lake City, UT 84111
　　　　　　　　　　　　　　　　　　　　　United States
　　　　　　　　　　　　　　　　　　　　　Telephone: +1 801 877 8100
　　　　　　　　　　　　　　　　　　　　　Facsimile: +1 801 877 8101
　　　　　　　　　　　　　　　　　　　　　chris.stackhouse@kirkland.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Plaintiff's counsel hereby certifies that they have conferred with counsel for Defendants to discuss the issues in the foregoing Plaintiff's Motion to Compel. Specifically, the parties had a telephone conference on March 15, 2022, a video conference on September 12, 2022, and a phone call on October 10, 2022 at which they discussed these issues, in addition to correspondence on March 23, 2022, March 29, 2022, April 27, 2022, August 24, 2022, September 15, 2022, September 20, 2022, September 23, 2022, and October 5–7, 2022.

                                                    */s/ Kate Walling*
                                                    Kate Walling

## CERTIFICATE OF SERVICE

      I hereby certify that on October 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

                                              */s/ David J. Zott*
                                              David J. Zott, P.C.