# Exhibit 7

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Howard Kaplan
To Call Writer Directly:
+1 312 862 3807
howard.kaplan@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

March 23, 2022

**VIA ELECTRONIC MAIL**

Re:   *Epps v. Dart, et al.*, No. 20 C 5742: Follow-up from March 15 Meet & Confer

Dear Counsel:

I write regarding ongoing discovery in the above captioned matter and in light of the parties' meet and confer on March 15, 2022. Specifically, I write to: (1) memorialize and confirm areas where the parties were able to reach agreement; (2) address continued deficiencies in Defendants' discovery responses; and (3) provide the requested information regarding ESI custodians. While we made progress during our meet and confer, Defendants' discovery responses and document productions remain inadequate. The discovery topics and deficiencies discussed herein are not an exhaustive list, and Plaintiff reserves the right to identify and raise additional issues as discovery continues.

We provide significant detail in this letter in an effort to remedy Defendants' discovery inadequacies without Court intervention. This cannot happen, however, until Defendants comply with the same Rules as any other civil litigant. To date Defendants have refused to do so by ignoring our core requests and failing to meaningfully undertake the basic work required to identify custodians and responsive documents. In particular, your refusal to to speak with Defendant Dart or collect his documents without a Court order — notwithstanding the specific and well-supported allegations against him and his office in particular —amounts to a self-imposed stay of discovery in contravention of the Court's prior denial of this remedy. As described below, we are willing to confer with you on or before Wednesday, March 30, provided you are prepared to offer real solutions to the disputes described in this letter. Otherwise, we will proceed with motion practice.

    1.    **Areas of Agreement.**

We appreciate Defendants' willingness to compromise on certain issues during the March 15 meet and confer. The list below memorializes the parties' agreements on a limited set of issues and provides deadlines for compliance.

**KIRKLAND & ELLIS LLP**

March 23, 2022
Page 2

- Defendants agreed to search the e-mail accounts of each named Defendant, aside from Defendant Dart, at least from the period March 1, 2020 to November 30, 2020.[1] For your convenience, Plaintiff has re-appended the preliminary search term proposal that we originally sent on February 15, with minor modifications, as Appendix A to this letter. Plaintiff remains open to negotiating and revising this proposal as necessary, and reserves his right to amend and/or add to the proposal, as well.

- Defendants agreed to follow up on "work orders" and "sanitation logs" from Division 4 from March 1, 2020 to November 30, 2020 to ensure all such documents have been produced. Please provide an update on this issue on or before March 30, 2022.

- Based on our conversation, we understand that you are amenable to updating Interrogatories 2 & 3 directed at Defendant Dart in his official capacity. Since complete responses to these interrogatories were originally due on January 19, 2022 and not served until February 2, 2022, please provide complete responses by April 6, 2022. .

- Defendants provided pest control records from August to October 2020. Defendants agreed to formally serve bates stamped copies of those records the week of March 21, 2022. We look forward to receiving those bates stamped copies. Plaintiff also notes that Defendants have not provided pest control records from March 1, 2020 to August 2020 and requests that Defendants provide such records on or before March 30, 2022.

- Defendants offered to produce daily "tier logs" for Division 4 from March 1, 2020 to November 30, 2020. Defendants also sent an example document for Plaintiff's review. After review, Plaintiff has concluded these tier logs are both responsive and relevant and accepts Defendants' offer to produce them. Accordingly, please provide the complete set of logs by March 30, 2022. .

- Defendants raised the possibility of extending the deadline for fact discovery and agreed to circulate a proposed revision to the current schedule for Plaintiff to review. Plaintiff looks forward to your proposed revision, but we will continue to treat the deadline as firm until the Court approves any such extension. We expect Defendants will do the same.

---

[1] This agreement does not preclude Defendants' from also identifying these individuals as custodians appropriate in response to the categories and periods set forth in Appendix B to this letter.

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 3

    **2.**    **Deficiencies in Defendants' Discovery Responses and Productions.**

    *A. Inmate Rosters.*

In RFP No. 1, Plaintiff requested rosters or other documents sufficient to identify inmates housed in Division 4 during the relevant period. Defendants objected on various grounds but, during the Meet and Confer, explained they would not produce such information because the burden purportedly outweighs the needs of this case, repeatedly emphasizing that this is not a class action. While not a class action, the burden or expense of the proposed discovery plainly does ***not*** outweigh its likely benefit. Plaintiff's *Monell* claim entitles him to a "***broad and substantial*** amount of discovery." *Awalt v. Marketti*, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012) (emphasis added) ("District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights.")

Each inmate housed in Division 4 during the relevant period is a potential witness to the unconstitutional conditions in which Plaintiff was forced to live. The identity of potential witnesses is clearly within the scope of discovery set by the Federal Rules of Civil Procedure. *Lewis v. City of Chicago*, 2004 WL 2608302, at *3 (N.D. Ill. Nov. 16, 2004) (granting motion to compel government documents identifying witnesses in single-plaintiff § 1983 suit because "plaintiff has a strong interest in obtaining the names of people who . . . have been identified . . . as potentially having knowledge [about the underlying claims]; indeed, all of those names would have to be disclosed . . . in response to a properly framed interrogatory."); *see also Sahibi v. Gonzales*, 2017 WL 1348959, at *3 (E.D. Cal. Apr. 5, 2017) (granting motion to compel because a "roster of inmates housed on Plaintiff's unit at the time the incident occurred may be relevant and necessary for the identification of potential inmate witnesses.").

Furthermore, Defendants own response to RFP 1 indicates that compiling this data would only require gathering "244 individual pages of documents." The burden of searching for and locating 244 pages does not justify withholding the identity of witnesses with first-hand knowledge of the allegations in the complaint. *See Lymon v. Chamberlain*, 2020 WL 6940985, at *4 (N.D. Ill. Nov. 24, 2020) (granting motion to compel in single-plaintiff § 1983 suit over objection that burden of producing "15,000 to 20,000 documents" outweighed likely benefit); *In re Abbott Lab'ys*, 2004 WL 726130, at *2 (N.D. Ill. Mar. 31, 2004) (the "estimated number of pages . . . alone does not show a burden to [producing party] and it in no way refutes the benefits of discovery

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 4

for plaintiffs."). This is especially prejudicial where, as here, Defendants have withheld other discovery on the basis that Plaintiff cannot individually name inmates.[2]

After the March 15 meet and confer, we believe we are at an impasse with respect to this issue, despite repeated efforts to come to agreement. Unless Defendants agree, on or before March 30, 2022, to produce rosters or other documents sufficient to identify inmates housed in Division 4 during the relevant period, Plaintiff will be required to seek the Court's intervention.

### B. Plaintiff's RFP #12: Photos and Videos of Division 4 in 2020.

In response to Plaintiff's RFP #12, which seeks "[a]ll photographs and videos reflecting the conditions in Division 4 at any time between March 1, 2020 and December 31, 2020," Defendants' objected, noting that the CCSO does not maintain a bank of photos or videos that is searchable by location or complaint. Instead, a "specific incident report number would be needed to be provided to proceed with any request related to photographs or videos."

We understand this response to confirm that there is a "bank" of photos and videos maintained by the CCSO. The mere fact that the "bank" is not searchable by complaint or location does not excuse Defendants from producing responsive photos and videos, which are highly relevant to the allegations in the complaint. According to Defendants, the video and photos are searchable by "incident report number." Plaintiff finds it highly unlikely that incident reports do not contain a description of the location of the incident and the date of the incident. Thus, Defendants can search the incident reports for incidents that occurred in Division 4 from March 1, 2020 to November 30, 2020 and, using the "incident report numbers" of the incidents that meet that criterial, locate any associated photos or videos. Those photos and videos should contain evidence of the conditions in Division 4 during the relevant time frame. Accordingly, on or before March 30, 2020, please confirm that you will produce all photos and videos related to incidents that occurred in Division 4 from March 1, 2020 to November 30, 2020. Please produce these materials on or before April 13, 2022.

### C. Defendants' Self-Help Stay of Discovery for Defendant Dart.

During the March 15 meet and confer, we were surprised to learn that Defendants are unwilling to produce any discovery from Defendant Dart absent a court order. We understand that **Defense counsel will not even speak to Defendant Dart** (or his assistant) about this matter, let alone search his custodial files or in any way involve him in discovery. Counsel has taken this remarkable position despite the fact that the Court has only stayed Defendant Dart's responses to

---

[2] Defendants have indicated that the grievance system is only searchable by inmate name. Thus, Plaintiff is unable to provide the names of inmates for which Defendants can search to find grievances relevant to Plaintiff's allegations.

**KIRKLAND & ELLIS LLP**

March 23, 2022
Page 5

Plaintiff's Interrogatories in his individual capacity, and specifically denied staying his responses to Plaintiff's Interrogatories in his official capacity.

 Contrary to the Court's decision and the Federal Rules of Civil Procedure, you informed us that you would be categorically excluding Defendant Dart from **all** discovery that required any contact with him or his assistant (including written and document discovery) absent a court order. You indicated this was a general practice employed in all cases, and was not based on the specifics of this case. You provided no authority to support your contention that Defendant Dart is entitled to a self-help perpetual stay of **all** discovery. We disagree that Defendant Dart is above discovery in this matter, especially based on the public record and Defendant Dart's own statements acknowledging his participation in the conduct giving rise to Plaintiff's case, as described more fully below. *See Bless v. Cook Cty. Sheriff's Off.*, 2017 WL 1344522, at *1 (N.D. Ill. Apr. 12, 2017) (denying motion to compel Defendant Dart's deposition but recognizing: "if [Plaintiff] wished to serve additional written interrogatories on Dart in order to follow up on his previous responses or any other matter, he was entitled to do so before the close of discovery (cleaned up)); *Martinez v. Cook Cty.*, 2012 WL 6186601, at *4 (N.D. Ill. Dec. 12, 2012) (granting motion to compel Sheriff Dart to produce certain documents); *Zabrowski v. Sheriff of Cook Cty.*, 2011 WL 247289, at *1 (N.D. Ill. Jan. 26, 2011) (granting motion to compel Sheriff Dart to respond to interrogatories).

 Defendants' refusal to include Defendant Dart as a participant in discovery in this matter, or even discuss the factual allegations in the complaint with him, has rendered Defendants' discovery responses and productions woefully deficient. For example, Defendants have refused to produce documents responsive to certain of Plaintiff's discovery requests regarding Division 4 because Defendants contend the discovery requests include incorrect assumptions about Division 4, including the basis for the decisions to close and then reopen the Division, or that Sheriff Dart played a meaningful (or any) role in these decisions. However, the public record, **and Defendant Dart's own representations**, are consistent with Plaintiff's allegations regarding the history of Division 4, and inconsistent with Defense Counsel's representations and reasons for refusing to produce responsive documents. Had Defendants consulted Defendant Dart or performed a review of his custodial files, they likely would have learned as much. For example, the public record makes clear that:

- Division 4 was constructed in 1929.[3]

---

[3] https://www2.illinois.gov/idoc/aboutus/JDS2017/Documents/Cook%20County%202017%20Jail%20Inspection.pdf

KIRKLAND & ELLIS LLP

March 23, 2022
Page 6

- In the years leading up to the closure of Division 4 in 2018, the Division had a significantly lower capital renewal budget than the other Divisions in Cook County Jail.[4]

- Division 4 was closed effective May 6, 2018.[5] Despite representations from counsel at the March 15 meet and confer to the contrary, Defendant Dart acknowledged this closure *in this case* in his official capacity response to Plaintiff's Interrogatory #2: "Division 4 was closed in approximately May 2018."

- Division 4 was scheduled to be evaluated for demolition in FY2020: "[T]he development of the DOC Campus Master Plan has shifted the focus of capital improvements away from Division IV and V."[6]

- Division 4 was reopened April 6, 2020.[7]

- Division 4 remained closed as of March 15, 2020. By April 17, 2020, Tier Q2 was operating at 46% capacity (22 inmates in occupancy) and Tier N1 was a quarantine tier operating at 40% capacity (16 inmates in occupancy). Ex. 2 at pgs. 10 & 12, Supplemental Declaration of Michael Miller ¶ 9, *Mays v. Dart*, No. 1:20-cv-02134 (N.D. Ill.), ECF No. 62-5.

- Sheriff Dart took responsibility for reopening Division 4 in light of the COVID-19 pandemic, representing to the court in another federal action that: "***The Sheriff also opened several divisions of the Jail that previously were closed*** in order to spread out detainee housing: ***Division IV*** [and others]." ***Defendant Dart's*** Opposition to Motion for Preliminary Injunction at 20, *Mays v. Dart*, No. 1:20-cv-02134 (N.D. Ill.), ECF No. 62 (emphasis added); *see also* Supplemental Declaration of Michael Miller ¶ 9, Mays v. Dart, No. 1:20-cv-02134 (N.D. Ill.), ECF No. 62-5 ("We opened previously closed divisions in order to spread housing assignments across more available space, including[] Division 4.")

---

[4] *See, e.g.*, https://opendocs.cookcountyil.gov/budget/archive/FY14-County-Budget-Volume-I.pdf, at 221-22;

[5] https://www2.illinois.gov/idoc/aboutus/JDS2017/2019%20Jail%20Inspections/Cook%20County.pdf.

[6] https://opendocs.cookcountyil.gov/budget/archive/2020_Executive_Budget_Recommendation_Volume_1.pdf, at 135, 149.

[7] https://www2.illinois.gov/idoc/aboutus/JDS2017/2020%20Jail%20Inspections/Cook.pdf.

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 7

- Re-opening Division 4 was not something that just happened, instead it was a significant effort that required preparation and planning:

  - "This is no small undertaking, and all was done in extremely short order to accommodate new housing units. Opening these tiers requires that the space be thoroughly cleaned; that utilities be connected; that a system for food and medical delivery be established; and that the Division be properly staffed." **Defendant Dart's** Opposition to Motion for Preliminary Injunction at 20, *Mays v. Dart*, No. 1:20-cv-02134 (N.D. Ill.), ECF No. 62.

  - Reopening "4 previously-shuttered divisions of the Jail" required "several weeks of preparation to make it habitable." **Defendant-Appellant Dart's** Brief at 30-31, *Mays v. Dart*, No. 20-1792 (7th Cir.), ECF No. 33-1.

- Since its reopening in April 2020, Division 4 has, once again, been slated for demolition: "Design work for the next major footprint reduction on the DOC campus, Division IV, will occur in FY 2022, with demolition projected to begin in late FY 2022 and completion in FY 2023."[8]

  - In the coming days, Plaintiff plans to serve an additional RFP seeking information related to the current demolition plans. If Defendants wish to avoid the formality of the RFP process, Plaintiff is willing to negotiate regarding this request.

Based on their incorrect factual understanding and refusal to include Defendant Dart as a participant in discovery, Defendants have failed to produce the documents that are at the heart of Plaintiff's *Monell* claim, including:

- Documents regarding expenditures, maintenance, or upgrades of Division 4 in comparison with other Divisions of the Cook County Jail, in response to Plaintiff's RFP #4.

- Documents regarding inspections of Division 4 from 2016 to 2020, in response to Plaintiff's RFP #14.

- Documents regarding the closure of Division 4 in May 2018, in response to Plaintiff's RFP #16.

---

[8] https://www.cookcountyil.gov/sites/g/files/ywwepo161/files/documents/2021-10/Volume%20I%20-%20Budget%20Overview%20FY22%20Executive%20Budget%20Recommendation.pdf, at 198.

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 8

- Documents regarding the condition of Division 4 in May 2018, in response to Plaintiff's RFP #17.

- Documents regarding the decision to re-open Division 4 in April 2020, in response to Plaintiff's RFP #18.

- Documents regarding the condition of Division 4 in April 2020, in response to Plaintiff's RFP #19.

- Documents regarding the preparation of Division 4 for re-opening in April 2020, in response to Plaintiff's RFP #20.

- Documents reflecting Defendant Dart's or Defendant Gallegos's knowledge of the conditions in Division 4 in 2020, in response to Plaintiff's RFP #21.

- Documents reflecting notice to Defendant Dart or Defendant Gallegos of the conditions in Division 4 in 2020, in response to Plaintiff's RFP #22.

The same issues have resulted in deficient responses to Plaintiff's Interrogatories 2, 3, 5, and 6 directed at Defendant Dart in his Official Capacity.

After the March 15 meet and confer, we believe we are at an impasse with respect to this issue, despite good faith efforts to come to agreement. Plaintiff will be required to seek the Court's intervention unless Defendants agree, on or before March 30, 2022, that: (1) Defendant Dart will participate in all written discovery, aside from that which has been stayed by the Court; (2) Defendants' will revise their discovery responses in light of the above stated public record; and (3) Defendants' will conduct a thorough search of the emails and files of Defendant Dart and other CCSO custodians with relevant information to identify documents responsive to the above referenced RFPs.

### 3. Further Information to Assist in Identifying ESI Custodians.

Plaintiff served his first set of RFPs on Defendants on November 29, 2021. At that point, it became incumbent on Defendants to conduct a reasonable search to find responsive information.[9] In practice, this requires identifying individual in possession of potentially responsive documents. To date, Defendants have not done so. Plaintiff raised this issue in his February 15 Deficiency Letter, and requested a response by February 21, 2022. In their March 4, 2022 response, Defendants again refused to identify custodians. Finally, at the outset of the March

---

[9]  *See* Advisory Committee Notes, Fed. R. Civ. P. 26(g).

# KIRKLAND & ELLIS LLP

March 23, 2022
Page 9

15 meet and confer, Defendants claimed an inability to identify a single individual with potentially responsive custodial files or emails, despite some minimal level of investigation. Once again, because the public record points to Defendant Dart as responsible for the actions underlying Plaintiff's discovery requests, Defense Counsel likely could have solved this problem by speaking to Dart during the course of his investigation and asking for his help in identifying custodians, including himself. Defendants' refusal to do so is hindering Defense Counsel's own ability to identify custodians.

Nonetheless, pursuant to our discussion at the March 15 meet and confer, and in light of Defendants' continued failure to identify ESI custodians outside of the named Defendants (not including Defendant Dart), we have identified, in Appendix B, categorically, the type of custodians we would like you to identify. This list does the following: (1) describes the type of custodians we are looking for; (2) indicates the period for the corresponding search; and (3) ties each requested custodian category to the corresponding discovery request.

We understand that Defendants will identify custodians that fit within each Appendix B category. Where Defendants contend no such custodian exists, Defendants must present such contention in writing with a brief explanation supporting their contention that no such custodians exist. Plaintiff also requests that Defendants' custodian proposal be accompanied by relevant org charts, evidencing each identified custodian's role within the Cook County Sheriff's Office, Cook County Jail, or the relevant entity. Please provide Defendants proposal on or before March 30, 2022.

In addition to, *not in lieu of*, Appendix B, Plaintiff has prepared the following preliminary list of individuals likely to have responsive and relevant material in their custodial files. This list is not exhaustive, nor is it intended to replace the identification of individuals falling within the categories set forth in Appendix B, which Defendants have agreed to perform. Plaintiff reserves all rights to amend the list below and seek additional custodians not named here.

- All named Defendants, including Defendant Dart (*see* point 2.C, *supra*).

- **Brad Curry**: Cook County Sheriff's Chief of Staff during the relevant period. *See* Appellant's Brief at 5, *Mays v. Dart*, No. 20-1792 (7th Cir.), ECF No. 33-1. Based on publicly available information, Mr. Curry potentially falls within categories 1-3, and 8-14 in Appendix B.

- **Michael Miller**: First Assistant Executive Director for the Cook County Department of Corrections since 2019 and through at least April 2020. *See* Suppl. Decl. of Michael Miller ¶ 1, *Mays v. Dart*, No. 1:20-cv-02134 (N.D. Ill.), ECF No. 62-5. In *Mays* Mr. Miller offered a declaration regarding the reopening of Division 4. Based

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 10

> on this information, Mr. Miller potentially falls within categories 1-3, and 8-14 in Appendix B.
>
> - **Steven Wilensky**: Assistant Executive Director at Cook County Jail who was interviewed in connection with the 2020 inspection of Division 4.[10] Based on this information, Mr. Wilensky potentially falls within categories 2-7, 9, and 11-12 in Appendix B.
>
> - **Jim Morrison**: Based on Defendants' representations during the March 15 meet and confer, we understand Mr. Morrison served as the "work order liaison" between Cook County Jail and the Cook County Department of Facilities Management. Based on this information, Mr. Morrison potentially falls within categories 1-5, and 7-14 in Appendix B.

Please confirm, on or before March 30, 2022, that you will search the custodial files of these individuals using a to-be-agreed-upon ESI protocol and Plaintiff's preliminary search term proposal in Appendix A.

Furthermore, in his response to Plaintiff's Interrogatory #2, Defendant Dart, in his official capacity, stated that "[t]he decision to close Division 4 in 2018 was made at the CCDOC executive administrative level." During the the March 15 meet and confer you reiterated this point, indicating the decision may have been made by an "executive committee." The identities of the individuals that sit on the CCSO executive committee are therefore obviously relevant and directly responsive to Plaintiff's Interrogatory #2 to Defendant Dart in his official capacity. Please identify all members of said "executive committee" and/or all individuals that make up the "CCDOC executive administrative level" along with each individual's title and responsibilities, as well as a description of the role of the "executive committee" and/or the "CCDOC executive administrative level." Please respond with this information on or before March 30, 2022.

Please let us know if you have questions regarding the information provided in this section and/or in Appendix B. Again, we look forward to receiving your responses regarding ESI custodians by March 30, 2022.

\* \* \*

---

[10] See https://www2.illinois.gov/idoc/aboutus/JDS2017/2020%20Jail%20Inspections/Cook.pdf.

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 11

We await your response on or before March 30, 2022.

                    Sincerely,

                    /s/ Howard Kaplan
                    Howard Kaplan

# KIRKLAND & ELLIS LLP

March 23, 2022
Page 12

## APPENDIX A

### Plaintiff's Initial Proposed Search Terms

The below list is a preliminary proposal in light of Defendant's failure to provide suggested custodians, sources, or terms. We reserve the right to modify, add, or subtract terms. The proposed terms assume searches are not case sensitive.

A. Epps

B. "Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV"

C. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (water OR drink* OR bottle* OR dehydrat*)

D. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (mold OR mildew OR fungus)

E. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (plumb* OR pipes OR rust OR leak*)

F. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (food OR meal OR portion) AND (griev* OR compl*)

G. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (bug OR pest OR insect OR roach OR cockroach OR flea OR bedbug OR rodent OR mice OR mouse OR rats OR infest*)

H. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (clean* OR maintenance OR maintain* OR custodia* OR sanitat* OR housekeep* OR inspect*)

I. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (close OR closure OR shut)

J. ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (open OR re-open OR reopen)

## KIRKLAND & ELLIS LLP

March 23, 2022
Page 13

K.  ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (plan* OR spend* OR budget OR future OR demoli* OR tear OR torn)

L.  ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (Dart OR sheriff OR Tom OR Gallegos)

M.  ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND (conditions OR unsafe OR unsanitary OR habit* OR unhabit*)

KIRKLAND & ELLIS LLP

March 23, 2022
Page 14

**APPENDIX B**

| # | Individuals who . . . | Period | Relevant RFP(s) |
|---|---|---|---|
| 1 | Communicate internally and/or with Cook County or other third parties regarding the budget for Cook County Jail facilities. | January 1, 2017-May 31, 2018<br><br>March 1, 2020-November 30, 2020 | 4 |
| 2 | Review inmate grievances and/or elevate issues for internal discussion. | March 1, 2020-November 30, 2020 | 6 |
| 3 | Made decisions regarding and/or discussed (internally or with third parties) the provision of drinking water for detainees housed in Division 4. | March 1, 2020-November 30, 2020 | 5, 7 |
| 4 | Communicated internally and/or with third parties regarding the existence of mold and mildew in Division 4. | March 1, 2020-November 30, 2020 | 5, 8 |
| 5 | Communicated internally and/or with third parties regarding plumbing problems, operations, repairs, and/or work performed in Division 4. | March 1, 2020-November 30, 2020 | 5, 9 |
| 6 | Communicates internally and/or with third parties regarding provision of food for detainees. | March 1, 2020-November 30, 2020 | 5, 10 |

# KIRKLAND & ELLIS LLP

March 23, 2022
Page 15

| # | Individuals who . . . | Period | Relevant RFP(s) |
|---|---|---|---|
| 7 | Communicated internally and/or with third parties regarding rodent problems in Division 4. | March 1, 2020- November 30, 2020 | 5, 11 |
| 8 | Communicated internally and/or with third parties regarding the structural and living conditions in Division 4 as of May 2018. | January 1, 2017-May 31, 2018 | 17 |
| 9 | Communicated internally and/or with third parties regarding the structural and living conditions in Division 4 as of March 2020. | January 1, 2020-May 1, 2020 | 20 |
| 10 | Communicated internally and/or with third parties regarding the closure of Division 4, which occurred in May 2018. | January 1, 2017-May 31, 2018 | 16 |
| 11 | Communicated internally and/or with third parties regarding the reopening of Division 4, which occurred in April 2020. | March 1, 2020- December 1, 2020 | 18 |
| 12 | Communicated internally and/or with third parties regarding the process for reopening Division 4 in April 2020. | March 1, 2020- November 30, 2020 | 13, 14, |
| 13 | Communicated with Sheriff Dart regarding Division 4. | March 1, 2020- November 30, 2020 | 21, 22 |
| 14 | Communicated with Director Gallegos regarding Division 4. | March 1, 2020- November 30, 2020 | 21, 22 |