IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHASE EPPS, | ) |
|       Plaintiff, | ) |
| v. | ) |
| THOMAS DART, Sheriff of Cook County, in his official and individual capacities, and Executive Director AMANDA GALLEGOS, Superintendent HERNANDEZ, Lieutenant JOHNSON, Shift Commander HUDSON, and Correctional Officer SPURLOCK, in their individual capacities, | ) Case No. 1:22-cv-02393 <br> ) Hon. Judge Mary M. Rowland <br> ) Magistrate Judge Harjani |
|       Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM COOK COUNTY DEPARTMENT OF FACILITIES MANAGEMENT**

The Cook County Department of Facilities Management is responsible for repair and maintenance of Cook County property, including Division 4 of the Cook County Jail. Plaintiff originally sought the subject documents from Defendants, but Defendants directed Plaintiff to Facilities Management. Mr. Epps accordingly subpoenaed Facilities Management over six months ago for a limited set of documents within the purview of its role and responsibilities. But Facilities Management has failed to meet its obligations. Instead, it promised additional productions and further investigation before abruptly and inexplicably declaring its case file closed via e-mail and ignoring all efforts at follow up. Mr. Epps therefore brings this Motion.

**BACKGROUND**

This motion is filed concurrently with Plaintiff's Second Motion to Compel, and incorporates that motion's discussion of Mr. Epps' allegations. Dkt. 49 at 1-2. In short, the deliberate conduct of the Cook County Sheriff's Office and certain of its employees subjected

Plaintiff Chase Epps to deplorable and objectively unreasonable conditions during his detention in Division 4 of Cook County Jail. Compl. ¶ 1. Indeed, for months Mr. Epps lived with contaminated and unpotable drinking water, sewage flowing into his living areas, pervasive mold that affected his ability to breathe, and infestations of rats and pests. *Id.* ¶ 1. The Cook County Department of Facilities Management executes on requested "repairs and maintenance of all properties" and "[m]aintain[s] the Department of Corrections" including "[c]leaning and sanitizing of all facilities." *Facilities Management*, Cook County Government, https://www.cookcountyil.gov/agency/facilities-management. Indeed, Facilities Management's mission is to "provide a safe, reliable, and clean environment, conducive and supportive to carrying out the business and services of the County." *Id.* Mr. Epps has subpoenaed Facilities Management, *see* Ex. 1, 3/1/22 Subpoena to Department of Facilities Management, and seeks several categories of relevant documents and information:

*Work Orders.* Plaintiff's concurrently filed Second Motion to Compel discusses work orders at length, and this motion incorporates that discussion. Dkt. 49 at 2-3, 4-6. Facilities Management receives work orders from the Cook County Sheriff's Office and is responsible for addressing them. Ex. 2, Facilities Management Mot. for Summ. J., *Armstrong v. Cook County*, No. 16-cv-9215 (N.D. Ill. Apr. 1, 2019) at 3–4 ("Work orders for issues at CCJ are sent to the DFM by the Sheriff's Office."). Although Facilities Management has produced a log listing at least a thousand Division 4 work orders from March 19, 2020 to December 31, 2020, it has not produced any of the actual work orders listed on that log (or any work orders, whatsoever). During a September 2, 2022 meet and confer, Facilities Management's counsel agreed to produce work orders from April 1, 2018 to December 31, 2020 to the extent Facilities Management possessed them. Ex. 3, 9/2/22 Email at 3-4. Instead, two weeks later, Facilities Management made a small

2

production of other documents and unilaterally declared the file closed. Plaintiff's counsel followed up, but Facilities Management continued to ignore its agreement. Ex. 4 9/15/22 Letter from A. Black to S. Kimmer; Ex. 3, 9/19/22 Email at 1.

*Preventative Maintenance Inspections.* Facilities Management has publicly disclosed that it conducts preventative maintenance—including preventative maintenance inspections—in Cook County Jail on a regular schedule. Ex. 5, *Birks v. Dart*, No. 1:12-cv-07701, 9/27/13 D'Amico Aff. ¶¶ 4, 8. Counsel agreed to investigate whether this is still its practice and produce related records. Ex. 3, 9/2/22 Email at 3-4. Instead, as with the work orders, Facilities Management abruptly declared the file closed and apparently made no investigation related to these documents whatsoever. Ex. 4, 9/15/22 Letter from A. Black to S. Kimmer; Ex. 3, 9/19/22 Email at 1.

*The Closing and Reopening of Division 4.* Facilities Management is responsible for maintaining Department of Corrections facilities, including Cook County Jail. *Facilities Management*, Cook County Government, https://www.cookcountyil.gov/agency/facilities-management. Maintenance work, such as disconnecting utilities and securing windows and doors against the elements, is necessary to safely prepare a building to stand vacant and unused for years at a time. Reopening a vacant building similarly involves maintenance work, such as reactivating utilities and ensuring plumbing fixtures remain operational and the building is fit to house inmates. Facilities Management handled that work. *Sheriff and health officials discuss study of coronavirus outbreak at Cook County Jail* (July 15, 2020) at 9:00, https://www.youtube.com/watch?v=X5lg-VcwYFk ("We expanded our footprint … It required … everyone, from our Facilities Management partner, in opening those buildings, … to our staff …"). Counsel for Facilities Management again agreed to investigate its role in the closure and re-opening of Division 4 but, instead, abruptly and unilaterally declared the file closed and ceased engagement apparently before undertaking any

3

such investigation. Ex. 3, 9/2/22 Email at 3-4; Ex. 4 9/15/22 Letter from A. Black to S. Kimmer; Ex. 3, 9/19/22 Email at 1.

*Expenditures on Cook County Jail Divisions*. Facilities Management incurs costs in maintaining the Divisions of the Cook County Jail. *See, e.g.*, Ex. 6, CCSAO Epps 000052 (including a "labor cost summary"). Plaintiff alleges that Division 4's maintenance had been neglected for years prior to its closure; Facilities Management's expenditures (*i.e.*, expenditures by the entity responsible for maintaining Division 4) are inarguably relevant to that allegation. Compl. ¶¶ 2, 18–19, 22. Yet again, counsel for Facilities Management agreed to investigate what documents were available on this issue but has since refused to respond. Ex. 4, 9/15/22 Letter from A. Black to S. Kimmer; Ex. 3, 9/19/22 Email at 1.

## ARGUMENT

More than six months after receiving Mr. Epps' subpoena, Facilities Management has failed to meet its basic discovery obligations. Facilities Management is not exempt "from the basic obligation of all citizens to provide evidence of which they are capable upon appropriate request." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *3—*4 (N.D. Ill. Sep. 29, 2021). Absent an undue burden, Facilities Management has a duty to respond to Mr. Epps' subpoena and produce documents and other electronically stored information as kept in the ordinary course of business. *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047 (N.D. Ill. Apr. 4, 2017) ("The law does not seek to absolve nonparties from any burden, nor could it. Effort of some sort is an inherent part of life").

Whether a subpoena imposes an "undue burden" turns on a number of case-specific factors, including (1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information

4

sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit. *Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015).

Facilities Management has not asserted that Mr. Epps' requests constitute an undue burden, much less explained any such assertion. And all the foregoing factors weigh decisively in favor of Mr. Epps for each of the categories of documents he moves on: (1) work orders related to Division 4; (2) records of preventative maintenance inspections in Division 4; (3) documents regarding preparations undertaken by Facilities Management to close and re-open Division 4; and (4) evidence of Facilities Management capital expenditures on Division 4.

## I. WORK ORDERS PROVIDE KEY INFORMATION ON DIVISION 4 MAINTENANCE.

While the obligation to produce work orders should belong in the first instance to Defendants, Defendants have refused to produce them. As explained in the concurrently filed Second Motion to Compel, work orders are central to the issues in this case. *See* Dkt. 49 at 2-3, 4-6. But instead of producing them, Defendants have pointed the finger at Facilities Management as the proper producing party. *See* Dkt. 28-10 at 23-29, 52-53, Defs.' Resps. to Requests for Produc. Nos. 9, 20. The fact is, both Defendants and Facilities Management have the work orders. They are generated by Defendants, then transmitted to Facilities Management for execution. They are easily identifiable documents and not burdensome to produce. Both the Defendants and Facilities Management should produce them to ensure a complete set is produced. At a minimum, somebody has to produce them. Yet neither has produced them despite repeated efforts by Plaintiff to secure their production. That is simply not a tenable response. Facilities Management (and/or Defendants) should be required to produce work orders covering April 1, 2018 to November 30, 2020.

5

The requested time frame is limited and appropriate—from shortly before Division 4's May 2018 closure to shortly after Mr. Epps' time in Division 4. This range covers three key events: Division 4's closure, Division 4's reopening, and the period of Mr. Epps' time in Division 4. As the concurrently filed Second Motion to Compel explains, work orders from the reopening and from Mr. Epps' time in the Division bear not only what conditions Mr. Epps experienced, but on Defendant Dart's knowledge of those conditions. *See* Dkt. 49 at 2-3, 4-6.

Work orders from slightly before and during the closure period will further show what conditions existed in Division 4 when it was closed, and what problems developed over the closure period. Problems in Division 4 as of its 2018 closure would be even more serious after the Division stood vacant for years—a trend that will be demonstrated by work orders from the period during the Division's closure. *See Epps v. Dart*, No. 20-cv-05742 (N.D. Ill.), Dkt. 89 at 9:15–10:15 (Judge Rowland: "[T]he plaintiff has to understand why the building was closed in 2018. . . . [I]f the building is condemned and there's problems in the building, you can't just put inmates there. . . . So they're going to get some discovery into that.").

Facilities Management's production of a summary log demonstrates that they have little difficulty identifying relevant work orders, and there is no reason to believe collecting and producing the underlying documents would be more difficult. Ex. 7, DFM Subpoena 000002–000058. Compliance with Mr. Epps' subpoena will almost certainly result in the production of the work orders, which have not been produced by any other party in this matter. Furthermore, as described above, they would not be burdensome for Facilities Management to produce—indeed, it previously agreed to produce them—nor would any minimal burden outweigh the likely benefit of these documents which are central to Mr. Epps' allegations. Accordingly, Facilities Management cannot meet its burden to show these requests are improper, *see Mann v. City of*

6

*Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *2 (N.D. Ill. Sep. 8, 2017), and should produce these documents, *see Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015).

II. **FACILITIES MANAGEMENT MUST IDENTIFY AND PRODUCE ALL PREVENTATIVE MAINTENANCE INSPECTION RECORDS.**

Mr. Epps is further entitled to Facilities Managements' preventative maintenance inspection records regarding Division 4. Facilities Management has publicly represented that it "performs preventative maintenance at CCDOC," including "preventative maintenance inspection[s]," on "a regular schedule." Ex. 5, 9/27/13 D'Amico Aff. ¶¶ 4, 8. There is every reason to believe it still does, particularly where its counsel has not denied it.

Documents regarding preventative maintenance inspections are directly relevant to Mr. Epps' claims. They would reflect what issues occurred in Division 4, what—if anything—was done to prevent problems, and who did that work and when. There is no reason to believe that any source other than Facilities Management has these documents, and Facilities Management has not claimed that there would be any burden in producing them. Instead, it previously agreed to investigate and produce responsive documents before abruptly reversing course. *See DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) ("[T]he relevance and proportionality limits in Rule 26 that guide the proper scope of discovery apply with equal force to nonparty discovery under Rule 45."). Accordingly, Facilities Management cannot meet its burden to show these requests are improper, *see Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *2 (N.D. Ill. Sep. 8, 2017), and should produce these documents, *see Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015).

III. **FACILITIES MANAGEMENT SHOULD PRODUCE RECORDS REGARDING PREPARATIONS TO CLOSE AND RE-OPEN DIVISION 4.**

Plaintiff requested documents regarding preparations made to close and re-open Division 4. Ex. 1, 3/1/22 Department of Facilities Management Subpoena Request Nos. 12–16. Facilities

7

Management has produced no documents in response to these requests, claiming that no such documents exist. *See, e.g.,* Ex. 8, 7/1/22 Facilities Management's Resp. to Pl.'s Subpoena at 6–7. But Facilities Management's counsel failed to respond to follow-up questions regarding that assertion, and it is belied by Facilities Management's public admissions regarding its responsibilities.

Facilities Management maintains Cook County Jail. *Facilities Management*, Cook County Government, https://www.cookcountyil.gov/agency/facilities-management. Maintenance work, such as disconnecting utilities (among many other things), is necessary to prepare a building to stand unused. Given its responsibilities, Facilities Management would have handled that work. What was done to prepare for Division 4's closure is relevant to its habitability on reopening; if little or nothing was done, as Plaintiff suspects, that would strongly support Mr. Epps' allegations. The same is true of reopening a vacant building: maintenance work, such as ensuring the plumbing functions, is necessary, and was Facilities Management's responsibility. *Sheriff and health officials discuss study of coronavirus outbreak at Cook County Jail* (July 15, 2020) at 9:00, https://www.youtube.com/watch?v=X5lg-VcwYFk ("We expanded our footprint … It required … everyone, from our Facilities Management partner, in opening those buildings, … to our staff …"). Its records are relevant to Mr. Epps' allegations that Defendant Dart decided to re-open Division 4 without ensuring its habitability. Compl. ¶¶ 2, 20, 24, 112–13. Again, compliance with Mr. Epps' subpoena will almost certainly result in the production of these documents, which have not been produced by any other party in this matter. Furthermore, Facilities Management has articulated no burden associated with producing these, let alone *undue* burden that outweighs the plain relevance of these documents, which this Court has previously recognized. *See Epps v. Dart*, No. 20-cv-05742 (N.D. Ill.), Dkt. 89 at 9:15–10:15 (Judge Rowland: "[T]he plaintiff has to understand why

the building was closed in 2018. . . . [I]f the building is condemned and there's problems in the building, you can't just put inmates there. . . . So they're going to get some discovery into that.").

Accordingly, Facilities Management cannot meet its burden to show these requests are improper, *see Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *2 (N.D. Ill. Sep. 8, 2017), and should produce these documents, *see Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015).

### IV. FACILITIES MANAGEMENT MUST PRODUCE RECORDS OF MAINTENANCE EXPENDITURES.

Mr. Epps seeks documents allowing him to compare Facilities Management's expenditures on Division 4 with its expenditures on other Divisions. Ex. 1, 3/1/22 Department of Facilities Management Subpoena Request No. 3. These documents are relevant to his allegations that Division 4 suffered from years of reduced maintenance before its closure, which in turn support his claim that Division 4 was uninhabitable when Defendant Dart reopened it, and he knew it. Compl. ¶¶ 2, 18–19, 22. Facilities Management has refused to produce anything on the grounds that "DFM is not responsible for approving the budget allocated to the Cook County Jail or its divisions." Ex. 8, 7/1/22 Facilities Management's Resp. to Pl.'s Subpoena at 2. But Mr. Epps seeks documents related to *expenditures*, not the budget.

Viewing this request through the proper lens, compelling compliance will produce relevant information. It strains credulity that Facilities Management, a governmental agency, does not record its expenditures. Indeed, despite multiple follow-up requests on this point Facilities Management has not contradicted that it has records of its own expenditures. Ex. 9, 8/10/22 Letter; Ex. 3, 9/2/22 Email at 3-4; Ex. 3, 9/19/22 Email at 1. This request is limited, reasonable, and non-cumulative. Facilities Management, the agency responsible for maintenance in Cook County Jail, is uniquely positioned to have records of spending on Division 4's maintenance. Facilities

9

Management has not claimed that producing these records would cause any burden, let alone a burden that would outweigh their benefit. Accordingly, Facilities Management cannot meet its burden to show these requests are improper, *see Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *2 (N.D. Ill. Sep. 8, 2017), and should produce these documents, *see Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion to Compel and order Facilities Management to produce (1) work orders related to Division 4; (2) records of preventative maintenance inspections in Division 4; (3) documents regarding preparations undertaken by Facilities Management to close and re-open Division 4; and (4) evidence of Facilities Management's expenditures on the Divisions of the Cook County Jail.

Dated: October 10, 2022                                    Respectfully submitted,

*/s/ David J. Zott*
James F. Hurst, P.C. (6202190)
David J. Zott, P.C. (6193505)
Kate T. Walling (6321681)
Sarah M. Kimmer (6320922)
Christopher T. Stackhouse (6330488)
james.hurst@kirkland.com
dzott@kirkland.com
kate.walling@kirkland.com
sarah.kimmer@kirkland.com
chris.stackhouse@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
United States
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Plaintiff's counsel hereby certifies that they have conferred with counsel for Department of Facilities Management to discuss the issues in the foregoing Plaintiff's Motion to Compel. Specifically, the parties had a video conference on September 2, 2022, at which they discussed these issues, in addition to correspondence on August 10, 2022, August 26, 2022, September 2, 2022, September 15, 2022, and September 19, 2022.

                                                      */s/ Kate Walling*
                                                      Kate Walling

## CERTIFICATE OF SERVICE

  I hereby certify that on October 10, 2022, the foregoing was electronically filed with the Clerk of Court using the ECF system which will send such filing to all attorneys of record, was served via electronic mail to all attorneys of record and counsel for Facilities Management, and was served via overnight mail on counsel for Facilities Management.

                 */s/ David J. Zott*
                 David J. Zott, P.C.