# Exhibit 2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Ian Charles Armstrong, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-9215 |
| | ) |
| Cook County, Illinois, et al., | ) Hon. Judge Matthew F. Kennelly |
| | ) |
| Defendants. | ) |

## DEFENDANT BILQIS JACOBS-EL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Bilqis Jacobs-El ("Jacobs-El"), through her attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her assistant, Joi Kamper, submits this Memorandum of Law in support of its Federal Rule of Civil Procedure 56 Motion for Summary Judgment.

Respectfully Submitted,<br>
KIMBERLY M. FOXX<br>
State's Attorney of Cook County

By: */s/ Joi Kamper*
Joi Kamper
Assistant State's Attorney
69 West Washington, Ste. 2030
Chicago, Illinois 60602
(312) 603-1427
Joi.Kamper@cookcountyil.gov

1

**Introduction**

Plaintiff Ian Armstrong ("Armstrong") has been incarcerated in the Cook County Jail ("CCJ") since 2014 on pending criminal charges. (Defendants Joint Rule 56.1 Statement of Undisputed Facts ("SOF"), ¶10).[1] In May of 2016, Armstrong was moved to cell 3415 in Division 10 of CCJ where he remained until approximately August 15, 2016. (SOF ¶¶12,13 and18). During that time, he alleges that both he and his cellmate, Ardamis Sims, complained of frequent plumbing issues with their toilet. (SOF ¶¶ 3,13, and 18). Armstrong has brought a single claim against Jacobs-El, in her official capacity as the director of the Department of Facilities Management ("DFM"), pursuant to 42 U.S.C. 1983. (SOF ¶ 1). Specifically, Armstrong alleges that DFM, pursuant to a policy or practice, refused to fix the plumbing issues with his toilet and falsely reported that these issues were rectified causing him to live in unsanitary conditions. (SOF ¶ 3). It is undisputed that DFM is not responsible for the cleaning cells at CCJ or providing inmates with cleaning supplies. (SOF ¶ 63).

Plaintiff has failed to establish his theory of liability against Jacobs-El in her official capacity is as a matter of law. It is undisputed that DFM does not have an express policy that its plumbers refuse or "fail" to fix toilets. Further, there is no evidence of a widespread practice of failing or refusing to fix toilets. Finally, there are no allegations (let alone evidence) that Jacobs-El had any direct involvement with any unconstitutional acts that allegedly led to Plaintiff's injuries. For these reasons, Jacobs-El is entitled to summary judgment.

**II.     Statement of Uncontested Material Facts**

   *a.     Work order process per DFM's policies and practices*

---

[1]     Filed concurrently with the underlying motion and this memorandum.

2

At all times relevant hereto, when an inmate at the Cook County Jail ("CCJ") needed their toilet fixed, they would have to submit a written grievance to the Sheriff's Office. (SOF ¶ 26). These grievances are submitted to Correctional Rehabilitation Workers ("CRW"s) assigned to the respective inmate's tier. *(Id)*. The work orders must be signed by a CRW before being submitted to Sheriff's work order department. *(Id).* The CRW assigned to Armstrong's tier during the relevant period was Defendant Michael Tylor. (SOF ¶ 15).

Work orders for issues at CCJ are sent to the DFM by the Sheriff's Office from the Sheriff's work order department. (SOF ¶ 61). During the relevant period, DFM received work orders from the Sheriff's Office by one of three ways:1) a call from the Sheriff's work order department to DFM's work order department, 2) a work order sent through an electronic system to the DFM work order department from the Sheriff's work order department, or 3) in cases of emergency, a call from the Sheriff's work order department to one of the foremen. (SOF ¶ 27). All work orders are printed at 3:00 pm daily by the DFM work order department. (SOF ¶ 29). The next day the foremen reviews and separates work orders and assigns them to the appropriate tradesman according to the issue and location of the issue. *(Id)*.

DFM typically does not see the original grievance as part of the work order. (SOF ¶ 30). DFM might see the original grievance from the inmate if the problem goes unresolved and the work order coordinator decides to attach the grievance to the work order and send it to the foremen. *(Id)*. Attaching a grievance to a work order happens only occasionally and would be at the discretion of the Sheriff's work order department. *(Id)*.

Prior to its own on-site assessment, DFM has no way to assess whether a work order is an emergency unless the Sheriff categorizes the issue as an emergency. (SOF ¶¶ 41 and 28). After

3

assessment, if DFM determines that a work order is an emergency, the work order is reclassified as a Life Safety Request ("LSR"), which is considered by DFM as an emergency. (SOF 41). Once a tradesman has assessed a situation and determined that it qualifies as an emergency or an LSR, DFM will typically respond to that issue within an hour to an hour and a half. (SOF 42).

Once DFM receives a work order, it is their standard practice to respond as soon as they can, which is typically within a couple of days to a week. (SOF 54). It is DFM's practice to respond to problems with toilets within one day of receiving the work order for a toilet issue. (SOF ¶ 52). A work order remains open until the issue is resolved. (SOF ¶ 62).

Per DFM policy, an inoperable toilet would be considered a LSR. (SOF ¶ 43). If an issue, such as a toilet that needs to be replaced, cannot be repaired the same day, the DFM plumber informs the Sheriff and the DFM foreman that a repair will take more time. (SOF ¶ 53). If a toilet in a cell needs to be replaced, DFM recommends to the officer on the tier that the cell be closed; However, DFM has not authority to close the cell. (SOF ¶ 46).

### b.  Grievances and DFM work orders regarding Plaintiff's toilet

During the period of his incarceration relevant to this matter, Armstrong alleges that he tried to file four grievances regarding the toilet in his cell leaking. (SOF ¶ 16). Armstrong alleges to have submitted grievances to CRW Tylor regarding his toilet issue on the following dates: June 3, 2016, June 18, 2016, June 29, 2016, and July 5, 2019. (*Id.*). In the June 3, 2016, and June 29, 2016, grievance Armstrong states that the plumber was there to fix the issue but that there is still a leak. (SOF ¶ 19).

During the relevant period, Plaintiff's cellmate, Ardamis Sims ("Sims"), filed three grievances regarding the toilet or regarding a leak from the wall in their cell. These grievances

were filed on May 26, 2016, June 4, 2016, and August 28, 2016. (SOF ¶¶ 21, 22 and 24). In his June 4, 2016, grievance Sims states that the plumber was there on June 3, 2016, to fix the leak but did not do any work and just insulted Sim and Armstrong. (SOF ¶ 22). In his August 28, 2016, grievance, which is the only grievance specifically about the toilet, Sims states that the plumber was there again to fix the leak but instead of fixing it intentionally increased the amount of water leaking. (SOF ¶ 24).

During the relevant period, DFM and the Sheriff have work orders responding to a leak or an issue with Plaintiff's toilet eight times on the following dates: May 27, 2016, June 3, 2016, June 7, 2016, June 9, 2016, June 29, 2016, July 11, 2016, July 14, 2016, and August 31, 2016. (SOF ¶ 36). Both the July 14, 2016, and June 29, 2016, work orders indicate that the toilet will need to be replaced in Armstrong's cell. (*Id*). The July 18, 2016, Watch Commander's Log notes that the toilet for Armstrong's cell was to be replaced the next day. (SOF ¶ 37). The other orders are regarding different types of leaks from the wall or sink. (SOF ¶ 36).

The plumbing work orders regarding Plaintiff's cell during the relevant period do not document that his toilet was inoperable until June 29, 2016. (*Id*). At that time, the plumber would have recommended, pursuant to DFM practice, that the cell be closed until the toilet was replaced. (SOF ¶ 55). John Gornick, the plumber assigned to Plaintiff's tier, testified that he always notified a sheriff's officer if the cell needed to be closed for replacement of a fixture. (SOF ¶ 58). The Watch Commander's Log from July 18, 2016, also indicates that Gornick was in the process of replacing the toilet and working with the Sheriff's officers during the process. (SOF ¶ 37).

c. *Armstrong's alleged injuries*

5

Armstrong testified at his deposition that issue with his toilet caused him to suffer injury in the form of bad dreams and vomiting. (SOF ¶ 64). Armstrong believes issues with his toilet brought on these problems because they started around the same time as his alleged toilet leak. *Id.*

### III. Legal Standard

Summary judgment is appropriate and shall be rendered when the pleadings, depositions, answers to interrogatories, together with affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). The moving party's initial burden is to establish that there is no question of fact that will be outcome-determinative in the case. *Id*. Once the moving party meets this burden, the opposing party must set forth specific facts that show a genuine issue of material fact exists. *Id.* The opposing party cannot rely on general conclusory allegations, but rather "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The non-moving party may not defeat a motion for summary judgment by simply resting on its pleadings. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Rather, Rule 56(c) requires the non-moving party to go beyond its pleadings and demonstrate the existence of a genuine issue for trial by designating specific facts in its own affidavits, or by depositions, answers to interrogatories, and admissions on file. *Celotex*, at 324.

### IV. Argument

In order to succeed in his Section 1983 claim against Jacobs-El in her official capacity as the director of DFM, Plaintiff must establish that: (1) DFM had an express policy calling for constitutional violations; (2) it had a widespread practice of constitutional violations that was so

6

permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority for the entity caused the constitutional violation. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690). "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833–34 (7th Cir. 2012). Here, Plaintiff is unable to establish that DFM is liable under any basis for a *Monell* claim.

As a threshold matter, Plaintiff has no basis for an express policy argument. As set forth in detail above, the express policies of DFM were to attend to detainees complaints and fix the equipment (including toilets) in their cells in a timely manner.

Further, Plaintiff is unable to establish that DFM had a widespread practice of constitutional violations. Plaintiff's claim for liability against Jacobs-El is based solely on his personal experience from May to August of 2016, and involve only one DFM employee, John Gornick. (SOF ¶ 33). A plaintiff may rely on his own experience to establish a *Monell* claim, see *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), ultimately he "must demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. "This may take the form of an implicit policy" or "a series of violations to lay the premise of deliberate indifference." *Id*. Here, there is no evidence to allow the Court to draw the reasonable inference that any deficiencies constituted a custom or practice so widespread that DFM is liable. See *McCauley, 671 F.3d at 616; Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

In the Seventh Circuit, a plaintiff cannot support a *Monell* policy claim that solely relies on the experiences of a single individual. See *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (holding that the specific actions of employees in the plaintiff's case alone did not create the

reasonable inference that a widespread practice existed); *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference"); *Cornfield v. Consolidated High Sch*. Dist. No. 230, 991 F.2d 1316, 1326 (7th Cir. 1993) (requiring "a pattern or series of incidents of unconstitutional conduct" in the absence of an explicit policy). Here, Plaintiff relies solely on his interactions with one plumber, regarding the issues in his cell only, to argue that there is widespread practice by DFM of failing to repair plumbing issues and then falsely reporting those issues as fixed.

Similarly, there is no evidence that Jacobs-El herself, the only DFM policy-making officials named in the Complaint, caused Armstrong to suffer a constitutional violation. In his First Amended Complaint, Plaintiff alleges that the plumber that failed to address his plumbing issues and then falsely reported that the issues were fixed was acting pursuant to practices and policies promulgated by DFM. (SOF ¶ 3). Yet there is no evidence in the record to establish how one plumber's alleged actions or inactions are linked to a policy or practice of DFM. To the contrary, DFM operating engineer Patrick Nolan, DFM plumbing Foreman Joseph Merkel, and the plumber assigned to Plaintiff's division, John Gornick, all testified that toilet issues were a high priority for DFM employees and that an inoperable toilet would mean that a cell should be closed until it was replaced. (SOF ¶¶ 43,45, and 50).

Further, an "'official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 703 (7th Cir. 2004) *quoting Farmer v. Brenner*, 511 U.S. 825, 837 (1994). Here, there

8

is no evidence that Jacobs-El, or any other DFM policy-making official knew of plaintiff's alleged constitutional violations as they do not control the jail. (SOF ¶¶ 28, 30, 43, 45, 46 and 50). Finally, if Plaintiff's allegations are true DFM's own employee was lying to his supervisors about making repairs to Plaintiff's plumbing, this is affirmative evidence that Jacobs-El was not aware of any issues related to Plaintiff's cell. (SOF ¶ 3).

## V. Conclusion

For the reasons set forth herein, Defendant Jacobs-El is entitled to summary judgment as to Count II, the only claim made against her, as a matter of law.

Case: 1:26-cv-02935 Document #: 513 Filed: 04/01/22 Page 10 of 10 PageID #:10034