# Exhibit 9

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

|  | 300 North LaSalle<br>Chicago, IL 60654<br>United States |  |
|---|---|---|
| Sarah M Kimmer<br>To Call Writer Directly:<br>+1 312 862 4206<br>Sarah.kimmer@kirkland.com | +1 312 862 2000<br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

August 10, 2022

*Via Electronic Mail*

Vjosana Mataj
Assistant State's Attorney
Civil Actions Bureau
Cook County Office of the State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602

Re: *Epps v. Dart et al*. Subpoena to Department of Facilities Management

Dear Counsel:

I write on behalf of my client Chase Epps, to address numerous deficiencies in the Cook County Department of Facilities Management's ("DFM") response to the subpoena dated March 1, 2022, and issued in connection with *Epps v. Dart et al.* 20-cv-05742 (the "Subpoena"). [1] While we appreciate DFM's limited production of maintenance logs and an organization chart, these materials represent just a small fraction of the responsive materials requested by Mr. Epps. In short, DFM's incomplete response falls far short of the obligations set forth in Federal Rule of Civil Procedure 45. Please remedy the issues summarized below and provide complete answers no later than August 19, 2022 and complete production of all responsive documents by September 2, 2022. If you believe it would be productive to meet and confer over the issues described herein, we will be available during the week of August 15th for a call or zoom meeting, so please let us know what dates and times that week work for DFM. Given that all document discovery will close in this case on November 1, 2022, and this subpoena was issued on March 1, 2022—over five months ago—we will have no choice but to move to compel if all responsive documents are not produced by September 2, 2022.

---

[1] That case has since been voluntarily dismissed and refiled as *Epps v. Dart et al.* No. 22 cv 02393. The parties stipulated that all discovery served under the prior case caption applies with equal force to the newly-filed action. *See* Stipulation Regarding Discovery, Dkt. 23, *Epps v. Dart*, 22-cv-02393 (July 18, 2022) (adopted July 19, 2022, *see* Dkt. 24).

**KIRKLAND & ELLIS LLP**

Vjosana Mataj
August 10, 2022
Page 2

I.    **OVERARCHING DEFICIENCIES**

*First,* DFM's response ignores entire categories of information and its production includes no communications. At the same time, DFM does not raise any objections about the relevance or scope of the Requests.[2] Mr. Epps was thus surprised when, after having four months to respond to the subpoena, DFM produced just 59 pages covering 18 categories of documents. Adding to the surprise was that a single document, the maintenance logs for Division 4, accounts for 56 of the 59 produced pages. Given the scope of the subpoena, this meager production indicates a total failure to search for and produce responsive documents in good faith. Even the maintenance logs, while responsive to some of the Requests, do not even address significant portions of the materials Mr. Epps requested. Instead of identifying the full set of responsive documents, however, DFM narrowly redefines various requests such that the maintenance logs appear responsive. Relatedly, the majority of the Requests seek documents *and communications*. DFM completely ignores that the Subpoena called for the production of communications. DFM may not manipulate requests to fit the data they wish to produce and its unilateral decision to narrow the scope of the Subpoena is simply not acceptable discovery practice. We therefore ask that DFM address the appropriate scope of each Request, as discussed in Section II, *infra*, including email searches, and produce all responsive documents by September 2. Mr. Epps remains willing to meet and confer regarding custodians and search terms, although it is DFM's responsibility to identify the correct custodians and search terms to retrieve all responsive documents.

*Second*, DFM repeatedly denies having any responsive documents on the basis that it is not responsible for the activities described in the Request. This specifically includes documents related to preventing mold and mildew and addressing rodents and insects within Cook County Jail. *See, e.g.,* DFM's Resp. to Pls. Subpoena Request for Production of Documents ("DFM's Resp.") at 3, 5 (responding to Requests 5 and 8). This response is shocking. In January 2022, current counsel for DFM represented Defendants in this matter, including the Cook County Sheriffs' Office ("CCSO"). In response to **identical** document requests, CCSO disclaimed responsibility for mold and mildew and rodent and insect remediation, and instead identified DFM as the responsible party. Counsel cannot credibly standby these conflicting responses nor is this type of finger pointing appropriate. Someone is obviously responsible, and someone has responsive documents. As one time counsel for both parties, you are responsible for either identifying the documents in DFM's possession, custody or control, or notifying current counsel for CCSO of the errors in its previously filed responses. DFM must immediately reconcile these errors.

---

[2]   DFM's failure to object on these grounds at the outset waives the objection. Fed. R. Civ. P. 45(d)(2)(B).

## KIRKLAND & ELLIS LLP

Vjosana Mataj
August 10, 2022
Page 3

**Third,** DFM must reproduce the maintenance logs. Many of the entries in the "Statement of Work" column are cut-off by the following entry. Based on the formatting, we understand this pdf to originate from an excel workbook. Please provide a copy of the native excel file or reproduce a fully legible version of the current pdf file.

*Finally*, as discussed below, the produced maintenance logs contradict a number of DFM's responses. To the extent there is any confusion, this letter will provide clarification.

**II.   DEFICIENCIES TO SPECIFIC REQUESTS**

Beyond the overarching issues with DFM's responses, many of DFM's responses to individual Requests suffer from specific deficiencies. This list is not exhaustive. Rather, it highlights the most glaring and pressing deficiencies in DFM's responses to specific Requests.

**Request 1**: **Organizational charts sufficient to identify the organizational structure and employees (including executive and supervising employees) of the Cook County Bureau of Asset Management and Department of Facilities Management from January 1, 2016 to February 1, 2022.**

The produced organization chart is not dated. *See* DFM Subpoena 000059. Please revise your response to confirm the individuals listed in this chart held their stated roles for the entire period, January 1, 2016 to February 1, 2022. To the extent there were personnel changes during this period, please produce additional versions of the organizational charts reflecting those changes.

**Request 2: Documents sufficient to identify those individuals responsible for overseeing the maintenance, repair, cleaning or sanitation of the Cook County Jail, including Division 4, at any time between April 1, 2020 and November 30, 2020.**

While we understand DFM claims no responsibility for cleaning and sanitation, DFM's response to Request 2 remains incomplete. Specifically, the produced maintenance logs do not identify the individuals responsible for the repair and maintenance of Cook County Jail. *See* DFM Subpoena 000002–000058. Please produce documents sufficient to identify the individuals responsible for the work listed in the maintenance logs.

**Request 3: Documents sufficient to determine and compare expenditures to maintain or upgrade Division 4 with expenditures to maintain or upgrade other Divisions of Cook County Jail from 2016 to 2021, including documents reflecting the capital renewal budget allocated to each Division of Cook County Jail.**

**KIRKLAND & ELLIS LLP**

Vjosana Mataj
August 10, 2022
Page 4

      Your response to Request 3 directs Mr. Epps to publicly available copies of the Cook County Jail budget. This is an invalid response on its face. DFM is obligated to produce all responsive documents in its possession, custody or control. It makes no difference if bits and pieces of the requested information might be available elsewhere. In any event, the response completely ignores the text of the Subpoena. Request 3 plainly asks for documents sufficient to examine *expenditures* for maintenance and upgrades to Division 4, as compared to others Cook County Jail divisions, during the period 2016 to 2021. Please produce documents responsive to the appropriate scope of Request 3. If DFM made no expenditures to maintain or upgrade Division 4 during the period 2016 to 2021, please revise your responses to reflect that admission.

      **Request 4: All documents and communications, including emails:**

      **(i) relating to the quantity or quality of drinking water available to detainees in Division 4 at any time from April 1, 2020 to December 31, 2020;**

      **(ii) relating to grievances or complaints, whether oral or written, made or submitted regarding the quantity or quality of drinking water available to detainees in Division 4 at any time from April 1, 2020 to December 31, 2020, including any consideration or responses by any Cook County Jail personnel;**

      **(iii) relating to efforts by Cook County Jail personnel or Division 4 detainees to improve the quantity or quality of drinking water available to detainees in Division 4 at any time from April 1,2020 to December 31, 2020.**

      Request 4 broadly seeks documents relating to the quality of water in Division 4, not just materials related to the responsibility for providing such water. DFM cannot credibly claim that it has no documents whatsoever "*relating to the quantity or quality of drinking water available*" in Division 4. DFM produced maintenance logs are replete with examples of DFM's efforts to fix issues of water access and contradict this response. *See, e.g.*, DFM Subpoena 000006, 000009, 000046. At the very least, DFM must have communications with Cook County Jail requesting water-related maintenance. *See e.g.* DFM Subpoena 000037 (noting communications with "Sgt. Ford" regarding brown water in cells). Please produce the missing responsive communications.

      **Request 6: All documents and communications, including emails:**

      **(i) relating to plumbing issues in Division 4 at any time from April 1, 2020 to December 31, 2020;**

## KIRKLAND & ELLIS LLP

Vjosana Mataj
August 10, 2022
Page 5

**(ii) relating to grievances or complaints, whether oral or written, made or submitted regarding plumbing issues in Division 4 at any time from April 1, 2020 to December 31, 2020, including any consideration or responses by any Cook County Jail personnel;**

**(iii) relating to efforts by Cook County Jail personnel or Division 4 detainees to resolve or prevent plumbing issues in Division 4 at any time from April 1, 2020 to December 31, 2020.**

In response to Request 6, DFM only produced the maintenance logs. These logs, however, make frequent reference to communications with Cook County Jail personnel, including but not limited to "Officer Hawkins" and "Sgt. Ford" about plumbing issues. *See e.g.,* DFM Subpoena 000012, 000037. Request 6 plainly asks for documents and communications. DFM may not unilaterally narrow the scope of a request. Please produce these missing responsive communications.

**Request 10: With respect to Division 4 of the Cook County Jail, all documents and communications, including emails, regarding actual or potentially inadequate, unclean or unsafe conditions or difficulties, challenges or problems in restoring or maintaining the division in a clean, safe or habitable condition from May 2016 through December 2020.**

Request 10 broadly seeks documents relating to clean or unsafe conditions in Division 4 and the overall habitability or lack thereof of Division 4. DFM disclaims responsibility for "cleaning or safety of Cook County Jail divisions" and claims that it "does not possess any [responsive] documents." This response lacks credibility. The produced maintenance logs include a number of entries describing unsafe and unclean conditions, including but not limited to toilets that will not flush and inoperable sinks. The logs also reference "sanitation reports." *See, e.g.,* DFM Subpoena 000006, 000009, 000012, 000037. DFM must produce these sanitation reports, as well as communications with the Cook County Jail personnel requesting maintenance support. DFM must also produce all other documents bearing on the habitability of Division 4, including any reports, analyses, or communications regardless its fitness for habitation and condition. Please produce these missing responsive communications and documents.

**Request 11: All documents and communications, including emails, regarding inspections of Division 4 from May 2016 through December 2020.**

DFM claims that it has no documents responsive to Request 11 because DFM only conducts air temperature inspections, which it deems unrelated to this action. But Request 11 plainly seeks *all* documents and communications regarding inspections. And DFM may not unilaterally narrow this Request based on its own assessment of relevance. We request that DFM immediately produce all records related to air temperature inspections in Division 4.

## KIRKLAND & ELLIS LLP

Vjosana Mataj
August 10, 2022
Page 6

In addition, the term "inspection" should not be read so narrowly that it only includes maintenance visits formalistically tagged as inspections. Instead "inspection" must be given its plain meaning and broadly include any visit meant to examine Division 4 and its conditions. Under this appropriate definition, maintenance logs confirm that DFM performs other inspections. *See e.g.* DFM Subpoena 000003 (referencing a "sweep" of Division 4 by DFM to repair plumbing fixtures). We request that DFM produce all records related to any formal or informal inspection of Division 4. If DFM insists that it has no responsive documents or communications, please update your responses to explain that DFM performed no inspections of Division 4, other than air temperature inspections, from May 2016 through December 2020.

**Request 12: All documents and communications, including emails, relating to the closure of or the decision or reasons to close Division 4 of the Cook County Jail in or around May of 2018.**

**Request 14: All documents and communications, including emails, studies, or reports relating to the decision to re-open Division 4 of the Cook County Jail in or around April 2020.**

Mr. Epps understands the DFM played no part in the decisions to close Division 4 in May 2018 and reopen Division 4 in April 2020. Appropriate responses to Requests 12 and 14 are not, however, conditioned on DFM being the decision-maker. Instead, Requests 12 and 14 seek all documents and communications *relating to* the decisions to close and then reopen Division 4. This plainly includes documents and communications about the closing and reopening of Division 4 in DFM's possession, custody or control, including, but not limited to, documents relating to the condition of Division 4 when it was closed or reopened, its fitness for human habitation, or any maintenance or repairs that may have been considered in connection with these decisions. Please immediately produce all responsive documents and communications relating to the decision to close Division 4 in May 2018 or reopen in April 2020 as further described in this letter.

**Request 13: All documents and communications, including emails, studies, or reports relating to the condition of Division 4 of the Cook County Jail when it was closed in or around May of 2018.**

**Request 15: All documents and communications, including emails, relating to the condition of Division 4 of the Cook County Jail when the decision was made to re-open it in or around April 2020.**

It strains credulity to believe that DFM has no documents relating to the condition of Division 4 when it was closed, and then subsequently reopened. It is difficult to imagine documents more relevant to the purpose of DFM than the condition of the facilities under its responsibility.

KIRKLAND & ELLIS LLP

Vjosana Mataj
August 10, 2022
Page 7

This request is not limited to maintenance logs, but obviously encompasses all reports, analysis, or communications regarding the conditions of Division 4 when it was closed and reopened, and its fitness for human habitation. In addition, DFM must also have maintenance logs from work performed in the months leading up to Divisions 4's closure in May 2018. Likewise, the produced maintenance logs clearly demonstrate DFM's involvement with inspections, maintenance, and repairs in preparation for the re-opening of Division 4 in April 2020. *See, e.g.,* DFM Subpoena 000003 ("4/4/2020 sweep through tiers and repair any issues with lavs, showers, and toilets in cells and dayrooms in prep for occupation of building."). Please produce these maintenance logs, along with all other documents and communications responsive to Requests 13 and 15 as described in this letter.

**Request 16: All documents and communications, including emails, relating to any cleaning, maintenance, inspection, or other preparation of Division 4 performed prior to or in connection with its April 2020 re-opening.**

DFM selectively responds to Request 16, ignoring the plainly relevant documents it already produced. First, DFM only disclaimed responsibility for cleaning Division 4. This response says nothing about the "maintenance, inspection or other preparation of Division 4." DFM undoubtedly possesses documents responsive to these categories of work. Indeed, the produced maintenance logs indicate that DFM inspected, performed maintenance, and otherwise helped prepare Division 4 for re-opening in April 2020. *See, e.g.,* DFM Subpoena 000003 ("4/4/2020 sweep through tiers and repair any issues with lavs, showers, and toilets in cells and dayrooms in prep for occupation of building."). At a minimum, we expect DFM to produce all documents and communications related to to this sweep and any other work performed on Division 4 in advance of inmates resuming residence in April 2020. If DFM has no responsive documents or communications, please revise your response to admit that DFM performed no maintenance, repairs, or inspections of Division 4 prior to its re-opening in April 2020. Second, as discussed above with respect to Request 11, DFM cannot unilaterally decide that air temperature inspections are not responsive, nor can it narrow the definition of that word. And, as noted, we expect DFM to produce all documents relating to the condition of Division 4 and fitness for human habitation when it was closed, and then subsequently reopened. Please supplement DFM's response to Request 16 with all responsive documents and communications.

\* \* \*

We await your prompt response and the prompt production of all responsive documents.

KIRKLAND & ELLIS LLP

Vjosana Mataj
August 10, 2022
Page 8

Sincerely,

Sarah M. Kimmer