**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CHASE EPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS DART, Sheriff of Cook County in | ) | Case No. 1:22-cv-02393 |
| his official and individual capacities, and | ) | |
| Executive Director AMANDA GALLEGOS, | ) | Hon. Judge Mary M. Rowland |
| Superintendent HERNANDEZ, Lieutenant | ) | |
| JOHNSON, Shift Commander HUDSON, and | ) | Magistrate Judge Sunil R. Harjani |
| Correctional Officer SPURLOCK, in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CUSTODIAL SEARCHES AND VIDEOS**

---

Defendants continue to disregard their fundamental discovery obligations and the unambiguous directives of this Court. In compliance with this Court's order of October 17, 2020, Plaintiff files this motion regarding custodial searches. Further, because Defendants have failed to comply with this Court's orders regarding Division 4 videos, as Defendants' recently filed affidavit makes clear, Plaintiff renews his first Motion to Compel regarding those videos.

**BACKGROUND**

As the Court knows, this is a § 1983 case alleging that Plaintiff Chase Epps experienced objectively unreasonable conditions while he was held as a pretrial detainee in Division 4 in 2020. Compl. ¶ 1. On August 15, 2022, following more than six months of failed negotiations, Mr. Epps filed his First Motion to Compel (the "First Motion"). Relevant to the present motion, the First Motion sought to compel: (1) reasonable custodial searches; (2) documents regarding the closure in 2018 and reopening in 2020 of Division 4; and (3) video footage from Division 4 evidencing

1

the conditions during Mr. Epps' period of confinement. Following briefing, the Court held hearings on September 19, 2022, September 28, 2022, and October 17, 2022. The relevant background, including prior rulings, is set out below.

*Custodial Searches.* On the issue of custodial searches, the Court ordered the parties to negotiate a set of ***agreed*** search terms and Defendants to produce responsive documents by October 7, 2022. Ex. 1, 9/19/22 Tr. 15:2–8, 20:8-10. The day after the hearing, Plaintiff sent a narrowed search term proposal and request to meet and confer. Ex. 2, 9/20/22 Ltr. from K. Walling. On October 7, instead of responding to Plaintiff's proposal or offering to meet and confer, Defendants unilaterally announced search terms and custodians. Ex. 3, 10/7/22 Email from J. DeVore. That same day Plaintiff sent a further compromise counterproposal that incorporated and responded to Defendants' belated proposal. Ex. 4, 10/7/22 Ltr. from K. Walling. Defendants made no effort to respond to the counterproposal. To resolve the custodial searches issue, during the October 17 status hearing the Court ordered Plaintiff to file the present motion regarding specific search parameters, including date ranges, custodians, and search terms. Ex. 5, 10/17/22 Tr. 21:11–22:13. This issue is addressed below in Section I, *infra*.

*Closing & Re-opening Documents.* The Court ordered Defendants to search for relevant memoranda and white papers regarding the closing and re-opening of Division 4, during the period 2018 to 2021. Ex. 1, 9/19/22 Tr. 12:19–22, 13:1–3. During the October 17 status hearing, Defendants reported that "[t]here are none. Any discussion regarding the opening and closing would be in e-mails." Ex. 5, 10/17/22 Tr. 4:15–17. In response, the Court ordered Plaintiff to include custodial search parameters for opening and closing documents in the present motion. *Id.* at 25:3–10. This issue is addressed below in Section II, *infra*.

2

***Division 4 Videos***. During the September 19 hearing, the Court also ordered Defendants to produce videos on the six dates corresponding to Mr. Epps' Division 4 grievances—June 18, 2020, August 14, 2020, August 18, 2020, August 27, 2020, October 5, 2020, and October 6, 2020. Ex. 1, 9/19/22 Tr. 17:15-18:4; Ex. 2, 9/20/22 Ltr. from K. Walling. The purpose in part was to determine if the videos are sufficiently clear to provide useful information about the conditions in Division 4. During the October 17 hearing, Defendants' counsel flatly represented that videos associated with the six dates for Plaintiff's grievances "no longer exist." Ex. 5, 10/17/22 Tr. 6:7-13, 11:15-12:1. In response, the Court ordered Defendants to produce the two identified videos and file an affidavit explaining their process and affirming no videos existed on any of the six grievance dates. *Id.* at 13:11-17, 16:13-24. Defendants filed the Affidavit of Sean Chambers, which does not claim that the subject videos do not exist, but does make clear Defendants violated the Court's September 19 and October 17 orders. *See* Chambers Aff., Dkt. No. 68. On October 31, 2022, Defendants also produced the two videos involving Mr. Epps, which confirm that video evidence will indeed be a valuable source of information regarding the conditions in Division 4. Issues related to the video productions are addressed below in Section III, *infra*.

As directed by the Court, Mr. Epps now files this motion to establish custodial search parameters and renews his motion to compel regarding videos from Division 4.

## ARGUMENT

I. **PLAINTIFF'S PROPOSED CUSTODIAL SEARCHES RELATED TO CONDITIONS IN DIVISION 4 ARE RELEVANT AND PROPORTIONAL.**

A. **Plaintiff's proposed timeframe of March 1, 2020 to November 30, 2020 narrowly covers the period likely to have responsive information.**

For searches related to the conditions in Division 4, the appropriate time period is March 1, 2020 to November 30, 2020. Defendants concede that, at minimum, Mr. Epps was in Division

4 for parts of June, August, September, October and November 2020. Ex. 6, 7/12/22 Defs. Resp. to Pl.'s 2d Requests for Prod. at 1. Searches should not, however, be limited to only the dates Defendants contend Mr. Epps was actually confined in Division 4, for at least three reasons.

*First,* Plaintiff alleges that the Cook County Sheriff's Office (the "Sheriff's Office") did not adequately prepare Division 4 for re-opening. Compl. ¶¶ 20–22. Discussions prior to the reopening—during the period March through April 2020— related to the condition of Division 4 would reflect any known hazards and any work done to prepare Division 4 for occupancy. The absence of any such discussions would also be evidence of failure to undertake such work. Both instances are highly relevant to Mr. Epps' claims.

*Second*, Defendant Dart was making rounds in the Cook County Jail, including Division 4, in March and April 2020.[1] Documents from that period would reflect the conditions he observed and demonstrate that he knew about those conditions.

*Third*, documents produced to date make clear that issues are not immediately addressed, and as a result, discussions and work related to these issues may extend for weeks or months beyond the dates they are initially raised. *See, e.g.,* Ex. 7, CCSAO Epps 000050 (work order dated 5/14/20 arising from a grievance dated 4/7/20). Limiting searches to the periods Mr. Epps was housed in Division 4 would exclude pertinent documents evidencing discussions related to and resolutions of the issues raised by Mr. Epps. As with the above, the absence of such discussions would likewise be probative.

### B. Plaintiff's proposed custodians each have relevant information.

Plaintiff proposes two sets of custodians: Defendants and non-defendant employees of the

---

[1] Video at 9:25, https://news.wttw.com/2020/04/15/sheriff-tom-dart-pushes-back-criticism-amid-covid-19-pandemic-i-m-outraged; Sheriff's Office Press Release, Mar. 20, 2020, https://www.cookcountysheriff.org/sheriff-dart-institutes-comprehensive-precautionary-measures-to-address-covid-19-threat/.

Sheriff's Office. As discussed below, each group is in possession of relevant information and the Court should order Defendants to run the search terms identified in Section I.C., *infra*, against the emails and custodial files of the listed individuals.[2]

      ***Defendants***. Plaintiff alleges each Defendant knew of the deplorable conditions to which he was exposed while housed in Division 4. Defendants have answered, denying Plaintiff's material allegations. Discovery is the accepted and indispensable mechanism for determining what Defendants knew and when they knew it. Accordingly, each of the Defendants, including Sheriff Dart, should be included in any collection.[3]

      ***Non-Defendant Employees***. Based on initial discovery from Defendants, Plaintiff has also identified the non-party employees listed below as likely to have relevant information regarding the conditions in Division 4, during the period of Mr. Epps' confinement.

1. **Don Beachem**, was the Superintendent of Division 4 during the period of Mr. Epps' confinement. Ex. 8, CCSAO Epps 004184. Plaintiff understands Mr. Beachem was involved in addressing plumbing issues, *see* Ex. 9, CCSAO Epps 004198, and he was similarly identified in the Department of Facilities Management's log of work orders as reporting issues in the Division. Ex. 10, DFM Subpoena 000002 at 000041.

2. **Cierra Ford**, is an employee of the Sheriff's Department. Already-produced documents evidence Ms. Ford reporting issues in Division 4. Ex. 11, CCSAO Epps 004202; Ex. 10, DFM Subpoena 000002 at 000044.

3. **Angela Hawkins**, is an employee of the Sheriff's Department. Already-produced documents evidence Ms. Hawkins reporting issues in and maintaining the work order list for Division 4. Ex. 12, CCSAO Epps 004183; Ex. 13, CCSAO Epps 004185; Ex. 10, DFM Subpoena 000002 at 000006.

---

[2]   An appropriate custodial search is not limited to email, but includes "all possible sources of relevant information." *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 936 (N.D. Ill. 2021). For each custodian listed herein, a proper search will include emails, as well as non-email data sources including but not limited to shared drives, databases, paper files, and mobile devices such as phones and tablets.

[3]   For the reasons set forth in his opposition brief, Plaintiff requests that the Court deny Defendants' pending Motion for Reconsideration regarding Defendant Dart and enforce its previous ruling that "plaintiffs are entitled to determine whether or not [Dart] has personal information about certain issues, and one of the ways in which you establish that is by searching his records to see if he was on email correspondence, whether he sent or received them with respect to the conditions in Division 4." Ex. 1, 9/19/22 Tr. 10:15–20.

4. **Michael Miller**, was the Department of Corrections' First Assistant Executive Director of Operations at the time Division 4 was re-opened in 2020. Defendants characterize Mr. Miller "as the person who spearheaded the reopening of Division 4" and insist his custodial files will have responsive materials. *See, e.g.,* Defs. Mot. to Reconsider at 7, Dkt. No. 47.

5. **Unnamed Superintendent(s) of Division 4**. According to Defendants, Mr. Beachem became Division 4 Superintendent in August 2020. Ex. 14, 7/12/22 Supp. Interrog. Resp. at 3. Discovery from the prior officeholders is relevant for the same reasons articulated as to Mr. Beachem.

   **C.    Plaintiff's proposed search terms target responsive documents.**

| Search String | Term | | |
|---|---|---|---|
| 1.  Plaintiff-Specific | Epps OR "20191223018" OR "2019-1223018" | | |
| Prefix to Search Strings 2–6 | ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "D IV") AND each of the following: | | |
| 2.  General Cleanliness | a.  clean*[4] | g.  unsafe | |
| | b.  unclean | h.  sanit* | |
| | c.  maintain* | i.  unsanitary | |
| | d.  housekeep* | j.  habitab* | |
| | e.  inspect* | k.  unhabit* | |
| | f.  conditions | l.  uninhabit* | |
| 3.  Potable Drinking Water | a.  dehydrat* | d.  water[5] | |
| | b.  potabl* | e.  drink* | |
| | c.  cooler | f.  undrink* | |
| 4.  Plumbing Issues | a.  sewage | e.  plumb* | |
| | b.  feces | f.  pipe* | |
| | c.  fecal | g.  leak* | |
| | d.  urine | | |
| 5.  Mold | a.  mold | | |
| | b.  mildew | | |
| | c.  fungus | | |
| 6.  Insects and Rodents | a.  insect | f.  rodent | |
| | b.  roach | g.  mice | |
| | c.  cockroach | h.  mouse | |
| | d.  flea | i.  rats | |
| | e.  bedbug | j.  infest* | |

---

[4]    An asterisk (*) at the end of a term serves as expander such that the search will capture everything utilizing the root word. For example, "clean*" can capture "cleaning," and "cleanliness."

[5]    Mr. Epps accepted Defendants' counterproposal to search only "water" instead of the more specific terms in his previous proposal, such as "red water," "contaminated water," etc. Ex. 3, 10/7/22 Email from J. DeVore.

***Search String 1***. This search string targets documents discussing Mr. Epps or non-privileged discussions of this litigation. The parties already agree Mr. Epps' inmate number is an appropriate search term. *See* Opp'n to First Mot. at 7, Dkt. No. 31. Defendants also previously searched "Chase Epps" and "Epps, Chase." Ex. 15, 10/21/22 Email from J. DeVore. The broader reference to "Epps" will catch these references, as well as documents which refer to Mr. Epps using only his last name. While variations of these strings have already been run, the earlier searches were also run over a shorter time period and fewer custodians.

***Prefix to Search Strings 2–6***. The prefatory string for searches 2-6 is meant to limit the search hits to discussions related to Division 4. These permutations reflect the various ways Defendants and Sheriff's Office employees refer to Division 4.

***Search String 2.*** This search string targets documents discussing the general cleanliness and habitability of Division 4. Emails or other custodial documents discussing these topics with respect to Division 4 are plainly responsive to the operative question: whether Defendants took steps to ensure a safe and habitable living space for Mr. Epps.

***Search String 3.*** This search string targets documents related to Mr. Epps' claim that inmates in Division 4 were denied suitable access to clean, potable drinking water and instead forced to ration water from a 10-gallon water cooler. Compl. ¶¶ 27–51. Indeed, terms like "cooler," "drink*," "potabl*," and "dehydrat*" will capture documents related to the core allegations in this case, that may not expressly use the parties' agreed-upon term "water."

***Search String 4.*** This search string targets documents related to Mr. Epps' claim that persistent, uncorrected plumbing issues resulted in ubiquitous leaks, including sewage and feces seeping from the pipes into the Division 4 living spaces. Compl. ¶¶ 69–95. In addition to general discussions of "sewage," Mr. Epps' terms would also capture discussions of the specific types of

7

sewage, *i.e.*, feces, fecal matter, and urine, all of which are plainly relevant to the allegations in the Complaint. Plaintiff's proposed search terms "plumb*," "pipe*," and "leak*" seek documents discussing the systemic plumbing issues.

*Search String 5*. This search string targets documents related to Mr. Epps' claim that he was exposed to extensive mold and mildew infestations in the shower room in his tier. Compl. ¶¶ 52–68. The parties agree that "mold" and "mildew" are appropriate terms. Ex. 3, 10/7/22 Email from J. DeVore. Mr. Epps additionally requests the term "fungus" to capture any related discussions that may not specifically use the terms "mold" or "mildew."

*Search String 6.* This search string targets documents related to Mr. Epps' claim he experienced insect and rodent infestations throughout Division 4. Compl. ¶¶ 96–100. The agreed-upon term "rodent" will not capture synonyms or related words. As a result it is imperative that Defendants search for terms like "mice," "mouse," "cockroach," etc. to identify any documents discussing the specific rodents Mr. Epps was exposed to in Division 4. Finally, Mr. Epps included "infest*" to identify any discussions related to significant problems with vermin or rodents not captured by the terms.

## II. DEFENDANTS MUST CONDUCT CUSTODIAL SEARCHES RELATED TO THE CLOSING AND RE-OPENING OF DIVISION 4 GIVEN THEIR FAILURE TO IDENTIFY RELEVANT MEMORANDA OR WHITE PAPERS.

### A. The Court's previously ordered timeframe of 2018-2021 should not be disturbed.

After extensive briefing and argument, this Court has already ordered Defendants to search for documents relating to the closing/reopening/reclosing of Division 4 from 2018 to 2021. Ex. 1, 9/19/22 Tr. 12:19–22. This corresponds to the timeframe when Division 4 was originally closed (May 2018), *see* Ex. 14, 7/12/22 Supp. Interrog. Resp. at 2, when it was evaluated for demolition (during FY2020), Ex. 19, 2020 Cook Cty. Annual Appropriation Bill Vol. 1 at 150, when

8

Defendant Dart abruptly ordered that it be reopened (April 2020), *see* Ex. 14, 7/12/22 Supp. Interrog. Resp. at 3, and when it was again closed (by no later than July 2021) and slated for demolition. *Id.*; 2022 Cook Cty. Annual Appropriation Bill Vol. 1 at 177.[6] Documents relating to each of these events are likely to exist throughout the period of 2018-2021. And, given the narrowness of the search topic, it imposes little burden on Defendants to run the searches. In short, the Court's existing ruling on the appropriate timeframe is correct and should not be disturbed.

### B.    Plaintiff's proposed custodians each have relevant information.

As recognized by this Court, Defendant Dart is an appropriate custodian for both the opening and closing periods. Ex. 1, 9/19/22 Tr. 10:9–14. ("It seems like [Dart] would have relevant information with respect to the closing of the division and the reopening of the division."). Indeed, in his public statements, Dart makes clear that he personally made the decision to reopen Division 4 in April 2020.[7] Additional custodians for each period are identified below.

*Closure of Division 4*. Sheriff Dart previously explained that the "decision to cease housing detainees in Division 4 in 2018 was made at the [Department of Corrections] executive administrative level" and identified members of Department of Corrections leadership at the time. Ex. 14, 7/12/22 Supp. Interrog. Resp. at 2. Defendants also represented that an unidentified former employee "took on [the] project" of the "closing or the reopening of Division [4]." Ex. 16, 4/27/22 K. Musick Email. These individuals are therefore relevant custodians for the closure period:

1.    **Salomon Martinez, former Superintendent of Division IV;**
2.    **Nneka Jones-Tapia, former Executive Director; and**
3.    **Jeff Johnsen, former Chief of Operations.**
4.    **The undisclosed former employee referred to by Defendants.**

---

[6]    https://www.cookcountyil.gov/sites/g/files/ywwepo161/files/documents/2022-01/Volume%20I%20-%20Budget%20Overview%20FY22%20Annual%20Appropriation.pdf.

[7]    The extent of Defendant Dart's public statements on this issue is covered in Plaintiff's Opposition to Defendants' Motion for Reconsideration. Opp'n to Mot. for Recons. at 2–3, Dkt. No. 56.

***Re-opening of Division 4.*** Sheriff Dart similarly explained that the Department of Corrections executive administration made the decision to re-open Division 4 in 2020, and identified the members of the Department of Corrections executive leadership at the time. Ex. 14, 7/12/22 Supp. Interrog. Resp. at 2-3. Defendants also represented that an unidentified former employee "took on [the] project" of the "closing or the reopening of Division Four." Ex. 16, 4/27/22 K. Musick Email. These individuals are therefore relevant custodians for the closure period:

1. **Don Beachem, former Division 4 Superintendent;**
2. **Unnamed Superintendent(s) of Division 4;[8]**
3. **Michael Miller, former First Assistant Executive Director of Operations;**
4. **Jane Gubser, First Assistant Executive Director of Programs; and**
5. **Tarry Williams, former First Deputy Chief of Staff for Operations.**
6. **The undisclosed former employee referred to by Defendants.**

***Re-closure of Division 4.*** Plaintiff does not yet have discovery regarding the individuals involved in once again closing Division 4 in 2021 and slating it for demolition. Of course, it is Defendants' burden to identify custodians with relevant information in the first instance. *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021) (explaining that it is the producing party's obligation to locate "the relevant people and the locations and types of ESI"). Absent such identification, it is reasonable as a first step to search the custodians above, as well as any other custodians who were part of the Department of Corrections executive administration during 2021.

---

[8] Defendant Dart stated that Mr. Beachem became Division 4 Superintendent in August 2020. Ex. 14, 7/12/22 Supp. Interrog. Resp. at 3. Plaintiff therefore reserves his right to add Mr. Beachem's predecessor(s) with involvement in the decision to re-open Division 4.

###### C.     Plaintiff's proposed search terms target responsive documents.

| Search String | Search String | Custodians |
|---|---|---|
| 7 | ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "DIV") AND **(clos\* OR shut\* OR ((cease\* OR stop\* or "no longer") w/3 hous\*))** | Closure Only |
| 8 | ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "DIV") AND **(reopen\* OR open\*)** | Reopening Only |
| 9 | ("Division 4" OR "DIV 4" OR DIV4* OR D4* OR "Division IV" OR "DIV IV" OR "DIV") AND **(strateg\* OR plan\* OR future OR demoli\* OR tear\* OR renovat\* OR refurbish\* OR aging)** | Closure and Reopening |

***Prefix to Searches 7–9***. The prefix used here is the same prefix used for the Division 4 conditions searches 2-6. As explained above, this prefix is meant to limit the searches to only Division 4.

***Search String 7***. This search string targets any discussion of closing, shutting down, or ceasing to house inmates in Division 4. The terms in bold reflect the types of language Plaintiff has seen or would expect to see in relevant discussions regarding the closures in 2018 and 2021.

***Search String 8.*** This search string targets any discussion of the 2020 reopening of Division 4.

***Search String 9.*** This search string targets discussions regarding the Sheriff's Office's plan with respect to Division 4. Public statements by the Sheriff's Office and the Department of Corrections have indicated various changes to Division 4 were part of a strategic plan and at times the building has been slated for demolition, renovation, or refurbishment.[9] The terms in this string target discussions on these topics.

---

[9]   *See, e.g.,* https://www.cookcountysheriff.org/sheriff-dart-announces-cook-county-jail-building-closures/; Compl. ¶ 2.

### III. PLAINTIFF'S PROPOSED SEARCHES ARE PROPORTIONAL TO THE NEEDS OF THE CASE.

As described above, Plaintiff's proposed time period, custodians, and search terms are narrowly tailored to identify documents relevant to Mr. Epps' claims and thus proportional to the needs of the case. Defendants have never provided any information suggesting the burden imposed by Plaintiff's plan outweighs its benefit. When Defendants provided hit counts for their prior searches on certain custodians and search terms, five of the six custodians returned fewer than 35 hits, with just one custodian returning 429 hits. Ex. 15, 10/21/22 Email from J. DeVore. Their prior search for documents regarding the reopening of Division 4 yielded zero hits. Opp'n to First Mot. at 8. This narrow sample strongly suggests that expansion of the parameters (i.e., time period, custodians, and search terms) will not impose a disproportionate burden on the Defendants. Although unlikely, to the extent any of the searches yields a disproportionately large number of hits, the parties can confer about narrowing the search term before documents are collected, reviewed, and produced.

In any event, discovery inevitably imposes some burden on litigants. That does not make it improper. Instead, when considering burden the Court must consider other factors such as the rights at issue (Mr. Epps' Fourteenth Amendment rights), relative access to information (Mr. Epps does not have access to any requested information), the Parties' relative resources (at minimum, the Department of Corrections, Defendant Dart, in his official capacity, and Defendants collectively have significant resources and are highly experienced in managing significant litigation), and the significance of the issues (the documents targeted in this proposal go directly to the issues pled in the Complaint). Each of these factors weighs heavily in favor of the Court accepting Mr. Epps' plan.

## IV. DEFENDANTS MUST COMPLY WITH THE COURT'S PRIOR ORDERS REGARDING THE PRODUCTION OF VIDEOS FROM DIVISION 4.

### A. Defendants must produce all videos corresponding to the dates of Mr. Epps filed grievances.

As noted, the Court originally ordered Defendants to produce videos corresponding to the date of Mr. Epps' six grievances. This was in part to determine if the videos were of sufficient clarity that they could provide relevant information regarding the conditions in Division 4. Ex. 1, 9/19/22 Tr. 17:12–22. On October 17, 2022, defense counsel claimed that those videos did not exist. Ex. 5, 10/17/22 Tr. 11:15-12:1. The Court ordered Defendants to produce the two previously-identified videos related to Mr. Epps and file an affidavit substantiating defense counsel's claim that no videos existed for the six grievance days ordered by the Court. *Id.* at 14:8–13.

The clarity of the two produced videos makes clear that video will be valuable evidence in this litigation.[10] Moreover, the Chambers Affidavit confirms that Defendants have violated both the Court's September 19 and October 17 Orders. First, the Affidavit makes clear that Defendants never searched for videos for the six grievance dates ordered by the Court. Instead, the Affidavit explains that Defendants only searched for videos associated with incident reports involving Plaintiff Epps. Chambers Aff. ¶¶ 8, 10 ("We located no other incident reports related to incidents or occurrences in Division 4 between June 1, 2020 and November 30, 2020, which referenced detainee 'Epps.'")

Second, the Chambers Affidavit does not support defense counsel's implausible claim that

---

[10] Attached hereto as Appendix A are a number of screenshots from the videos produced on October 31. Notably, the videos clearly show inmates drinking from the water cooler in the common area of Division 4, supporting Mr. Epps' allegations regarding drinking from a water cooler due to lack of potable water. *Compare* Compl. ¶¶ 32-37 *with* Appendix A at A-1. The videos also show trash and other items left throughout the common area, strongly suggesting the presence of rats or other large rodents or pests would be visible on the video. *See, e.g.,* Appendix A at A-2. The clarity and visibility in these videos makes clear that video will be valuable evidence in this litigation.

no videos exist for the six grievance dates. Indeed, it suggests exactly the opposite by confirming that videos are retained when associated with an incident report. (Chambers Aff.¶ 6) Incident report numbers, which are tied to video, *see, e.g.,* Ex. 1, 9/19/22 Tr. 15:18-23, contain *the location and year of the incident* and are then sequentially numbered. *See* Ex. 17, CCSAO Epps 000033. They are in the format: DIV#-YYYY-###, *e.g.*, DIV4-2020-14168. *Id.* Daily reports listing the incidents for that day are also available. *See, e.g.*, Ex. 18, CCSAO Epps 004057. An incident for which Defendants have produced video is numbered DIV-4-2020-14168 and took place on November 3. Based on the sequential numbering -14168, there had been over 14000 incidents in Division 4 by November 3. That indicates approximately 70 incidents reported per day in the roughly 200 days Division 4 had been open.

Given the large number of incident reports per day, it is nearly impossible that no videos would exist for any of the six days on which Mr. Epps submitted grievances, and the Chambers Affidavit makes no such claim. Indeed, videos almost certainly exist for all the days. With little effort, the Defendants can identify the incidents that correspond to the dates of Mr. Epps' grievances, and then pull the associated video. The Court should force compliance from Defendants and order the immediate production of videos from the six grievance dates.

**B.    Defendants must produce additional videos evidencing the conditions in Division 4.**

The Court initially limited video productions to the dates on which Mr. Epps filed grievances, in order to allow the parties to explore the utility of the videos for identifying conditions. Ex. 1, 9/19/22 Tr. 17:12–22. The videos produced by Defendants on October 31, 2022, provide clear evidence of the conditions on those days and definitive evidence that additional videos will likely provide substantial, relevant evidence as to the conditions in Division 4. *See* Appendix A. Accordingly, Plaintiff renews his motion to compel video from Division 4 from

14

March 1, 2020 to November 30, 2020. *See* Mot. to Compel at 8–9, Dkt. No. 28.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Custodial Searches and Video, and enter an order (1) approving Plaintiff's proposed searches and (2) again directing Defendants to produce video footage from the dates Mr. Epps submitted grievances, as well as the additional footage requested in his first Motion to Compel. Plaintiff further requests the Court set a compliance date of December 20, with an interim status report on the progress made on both of these tasks to be filed by December 13.

Dated: November 4, 2022                    Respectfully submitted,

*/s/ David J. Zott*

James F. Hurst, P.C. (*lead trial attorney*)
David J. Zott, P.C.
Kate Walling
Sarah M. Kimmer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
United States
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
james.hurst@kirkland.com
dzott@kirkland.com
kate.walling@kirkland.com
sarah.kimmer@kirkland.com

Christopher T. Stackhouse
KIRKLAND & ELLIS LLP
60 East South Temple
Salt Lake City, UT 84111
United States
Telephone: +1 801 877 8100
Facsimile: +1 801 877 8101
chris.stackhouse@kirkland.com

*Attorneys for Plaintiff*

## Appendix A:  Selected Screenshots from Division 4 Videos[1]

**Figure A-1[2]**



Figure A-1 shows an inmate getting water from a yellow-igloo water cooler in the center of the Division 4 day room.

---

[1]    On October 31, 2022, Defendants produced a set of videos associated with two incident reports involving Mr. Epps.

[2]    DVR_1_CAM_12_12_200918150500_1500_7f_00.h3r at 15:11:14 (associated with incident report DIV4-2020-11867).

A-1

**Figure A-2[3]**



Figure A-2 also shows the yellow-igloo water cooler in the center of the Division 4 day room. In addition, circled in red is a piece of trash that is visible on the videos.

---

[3]  DVR_3._CAM_7._07_201103144500_1500_7f_00.h3r at 14:47:07 (associated with incident report DIV4-2020-1416).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

 */s/ David J. Zott*
David J. Zott, P.C.